EMIL PETROSSIAN (SBN 264222)
epetrossian@glaserweil.com
ALEXANDER R. MILLER (SBN 294474)
amiller@glaserweil.com
GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
600 West Broadway, Suite 2850
San Diego, CA 92101
Tele.: (619) 765-4380

*Additional Counsel Listed on Signature Page*

Attorneys for Defendants,
NEOLOGY, INC., BRADLEY H. FELDMANN,
OEP CAPITAL ADVISORS, LP, OEP NEOLOGY CAYMAN, LP,
and OEP VI GENERAL PARTNER, LP

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH N. MULLIS, an individual,<br><br>　　Plaintiff,<br><br>v.<br><br>NEOLOGY, INC., a Delaware corporation; BRADLEY H. FELDMANN, an individual; OEP CAPITAL ADVISORS, LP, a Delaware limited partnership; OEP NEOLOGY CAYMAN, LP, a Cayman Islands limited partnership; OEP VI GENERAL PARTNER, LP, a Cayman Islands limited partnership; and DOES 1 through 50, inclusive,<br><br>　　Defendants. | CASE NO.: **'25CV3247 CAB MMP**<br><br>**DEFENDANTS OEP NEOLOGY CAYMAN, L.P. AND OEP VI GENERAL PARTNER, L.P.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1367, 1441, 1446 AND 9 U.S.C. §§ 203, 205**<br><br>Action Filed in State Court: September 25, 2025 |

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1446 and 9 U.S.C. §§ 203, 205, Defendants OEP Neology Cayman, L.P. ("OEP Neology") and OEP VI General Partner, L.P. ("OEP General Partner," and together with OEP Neology, the "Removing Defendants") hereby remove the action pending as *Joseph N. Mullis v. Neology, Inc., et al.*, Case No. 25-CU-051830C, from the Superior Court of the State of California, County of San Diego (the "State Court Action"), to the United States District Court for the Southern District of California. In support of this removal, the Removing Defendants hereby provide "a short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a).[1,2]

## I. JURISDICTION

1. This Court has original jurisdiction over the State Court Action.

2. "An action or proceeding falling under the [Convention on the Recognition and Enforcement of Foreign Arbitral Awards (commonly known as the "New York Convention" or "Convention")] shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . have

---

[1] If the Court requests additional information or removal is challenged, Removing Defendants will provide further evidence supporting the Court's jurisdiction, and Removing Defendants request the opportunity to brief any disputed issues and to present oral argument, if necessary. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84 (2014) (a removing defendant is only required to provide a "short and plain statement" of the bases for removal and need not present or plead evidentiary detail); *Janis v. Health Net, Inc.*, 472 F. App'x 533, 534 (9th Cir. 2013) ("Nothing in 28 U.S.C. § 1446 requires a removing defendant to attach evidence of the federal court's jurisdiction to its notice of removal. Section 1446(a) requires merely a 'short and plain statement of the grounds for removal.'") (citations omitted); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) ("[W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of evidence that the jurisdictional requirements are satisfied.").

[2] This Notice of Removal is filed subject to and without waiving any Defendants' right to seek to compel mandatory arbitration of this dispute, or any arguments that any Defendant is not a proper party to this action. In addition, any recitations in this Notice of facts alleged by Plaintiff in the Complaint are not and should not be construed as admissions or acknowledgments by Defendants that any such facts are accurate or correct.

original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203.

3. "Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention," like the State Court Action does here, as explained below, "the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending." 9 U.S.C. § 205.

## II. VENUE

4. The State Court Action was filed in the Superior Court of the State of California, County of San Diego. Venue therefore properly lies in the United States District Court for the Southern District of California. 28 U.S.C. §§ 84(d), 1441(a).

## III. REMOVAL IS TIMELY

5. The Removing Defendants' Notice of Removal is timely for two reasons.

6. First, removal under the Convention is permitted "at any time before the trial." 9 U.S.C. § 205. The Removing Defendants file this Notice of Removal pursuant to the Convention, well before any trial. Indeed, no trial date is set in the State Court Action, and the case remains in its early stages.

7. Second, in general, any notice of removal may be filed within 30 days of a defendant's receipt from plaintiff of a copy of the pleading initiating a civil action or proceeding. 28 U.S.C. § 1446(b). Here, Plaintiff filed the complaint (the "Complaint") initiating the State Court Action in the Superior Court of the State of California, County of San Diego, on September 25, 2025. Bradley H. Feldmann was served with the Summons and Complaint on October 27, 2025. Neology, Inc. ("Neology") was served on October 28, 2025. The Removing Defendants were served on October 29, 2025. Accordingly, this Notice of Removal is also filed within 30 days of service of the Complaint and is timely under 28 U.S.C. § 1446(b) as well.

## IV.   ALL NAMED DEFENDANTS CONSENT TO REMOVAL

8.   Pursuant to 28 U.S.C. § 1446(b)(2)(A), to remove, all defendants who have been properly joined and served must join in or consent to the removal of the action. All do. Named Defendants who have been served, Bradley H. Feldmann, Neology, and OEP Capital Advisors, L.P. ("OEP Capital," and together with the Removing Defendants, the "OEP Entities"), consent to removal.

## NATURE OF ACTION AND CLAIMS

9.   According to the Complaint, Plaintiff worked for Defendants for nearly two decades. (Complaint ¶ 15.) In or around 2014, Plaintiff entered into an Employment Agreement promising an annual performance-based bonus and severance if Plaintiff was terminated without cause. (*Id.*)

10.   In 2017, the OEP Entities acquired Neology. Plaintiff alleges he was then offered revised Employment Agreement terms that included an offer to participate in both a Management Equity Plan ("MEP") and "a direct co-investment right 'pari passu' with OEP itself". (Complaint ¶ 17.) Plaintiff alleges that Defendants asked for approval to "install [the new agreement] as of September" and that Plaintiff signaled his interest and readiness to proceed in August 2017. (*Id.* ¶¶ 18-19.) Sometime thereafter, Plaintiff claims to have accepted the revised Employment Agreement terms. (*Id.* ¶ 20.)

11.   What Plaintiff refers to as the "MEP" is memorialized in an Incentive Partnership Interest Grant Agreement dated May 24, 2018 (the "First Grant Agreement"), entered into by and among Plaintiff and the Removing Defendants. (*See* Declaration of Robert Haney, Jr. In Support of Notice of Removal, Ex. A.) Along with the First Grant Agreement, the parties also entered into a Side Agreement and a Deed of Adherence. (*See* Haney Decl., Exs. B & C.) In 2022, Plaintiff and the Removing Defendants entered into a second smaller issuance memorialized in an Incentive Partnership Interest Grant Agreement dated March 1, 2022 (the "Second Grant Agreement," and together with the First Grant Agreement, the "Grant Agreements").

(*See* Haney Decl., Ex. D.) Section 9 of both Grant Agreements states that the Agreements and any Side Agreement contain the entire agreement "with respect to the subject matter contained herein." (*See* Haney Decl., Exs. A & D.) Section 12 of both Grant Agreements contain arbitral clauses requiring arbitration under the Rules of Arbitration of the International Chamber of Commerce. (*See id.*)

12. As to his supposed pari passu rights, Plaintiff alleges that in or about September 2018, he was included on an internal spreadsheet setting forth proposed investment allocations for the "pari passu co-investment right" he was purportedly offered under the revised Employment Agreement terms. (Complaint ¶ 22.) Plaintiff's theory is that this spreadsheet reflected Defendants' affirmative confirmation of Plaintiff's pari passu terms. Despite this, Plaintiff acknowledges that he was never sent formalized documents for the pari passu opportunity, and the Parties never entered into any subscription agreements documenting the purported rights.

13. Plaintiff alleges that despite confirming his acceptance to the revised Employment Agreement terms, including the MEP and pari passu rights, Defendants "never followed through with the promised investment opportunity." (*See* Complaint ¶ 21.) Regarding the MEP, Plaintiff alleges that on or about March 25, 2022, he and Neology had a dispute about the application of his vesting schedule and as a result of the corrected schedule, Plaintiff reached 100% vesting by July 2022. Plaintiff alleges that the value of his vested shares was $524,807 a few months before his termination. But according to Plaintiff, he was not paid the full vested amount upon his termination as supposedly required and instead was only offered a $185,000 payout. (*See id.* ¶ 24-25.) Regarding the pari passu investment rights, Plaintiff states that despite his requests, he was never given a chance to participate. Then, on or about September 29, 2025, Defendants, through counsel, denied the existence of such rights in connection with Plaintiff's termination. (*Id.* ¶ 30.)

14.   Plaintiff claims that not long after he raised questions about Defendants' contractual obligations to him, Defendant terminated his employment on September 26, 2022, which was made effective four days later. (*See id.* ¶¶ 26, 29.) While Plaintiff acknowledges that the termination was framed as part of a restructuring, Plaintiff takes the position that since only ten individuals were terminated, there were pretextual reasons for his firing. (*Id.*) Plaintiff further alleges that Defendants attempted to coerce him into signing a separation agreement "that would have forced him to give up nearly everything he had earned," which he claims would have included earned and accrued bonuses, rights to the pari passu investment, and the MEP benefits that had already fully vested. (*See id.* ¶ 28.)

15.   Based on the foregoing, the Complaint includes causes of action for breach of contract, failure to pay earned wages, promissory fraud, breach of implied covenant of good faith and fair dealing, violation of California Labor Code §§ 98.6, 1102.5, 1102.6, conversion, violation of California Penal Code § 496, and unfair competition.

16.   The Removing Defendants deny Plaintiff's claims, deny any alleged wrongdoing, and deny that Plaintiff is entitled to any relief sought against the Defendants.

**ORIGINAL JURISDICTION PURSUANT TO 28 U.S.C. § 1331**

17.   This Court has original jurisdiction over the State Court Action pursuant to 28 U.S.C. § 1331 and 9 U.S.C. § 203. Indeed, by statute, district courts have original jurisdiction over an action or proceeding falling under the Convention, regardless of the amount in controversy. *See* 9 U.S.C. § 203.

18.   Removal to federal court is proper under the Convention "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement . . . falling under the Convention[.]" *See* 9 U.S.C. § 205. Accordingly, for removal to be proper, the Court must determine that (1) the underlying arbitration agreement or award falls under the Convention, and (2) the

action or proceeding at issue relates to that agreement or award. *Day v. Orrick, Herrington & Sutcliffe, LLP*, 42 F.4th 1131, 1133 (9th Cir. 2022) (holding that (1) if the underlying arbitration agreement or award falls under the Convention, and (2) the action or proceeding relates to that agreement or award, then the federal district court has jurisdiction over the action or proceeding).

19. For the first consideration, "[i]n deciding whether the parties entered an arbitration agreement falling under the Convention, courts consider four questions: (1) is there a written agreement to arbitrate; (2) is the agreement commercial in nature; (3) does the agreement designate a country that is a signatory to the Convention; and (4) is a party to the agreement a foreign citizen or entity." *Mullen Techs., Inc. v. Qiantu Motor (Suzhou) Ltd.*, 2020 U.S. Dist. LEXIS 116323, at *7 (S.D. Cal. July 1, 2020) (citing *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1243 (S.D. Cal. 2000)).

20. On the second consideration, the Ninth Circuit has broadly interpreted the phrase "relates to" in 9 U.S.C. § 205 to mean "'whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case[.']" *Infuturia Global Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1138 (9th Cir. 2011) (emphasis in original) (quoting *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002). As a result, "the district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense." *Beiser*, 284 F.3d at 669. "Although [courts] generally construe removal statutes strictly, the plain language of § 205 provides federal courts with remarkably broad removal authority." *Infuturia Global Ltd.*, 631 F.3d at 1138 n.5 (citations omitted).

21. As discussed in more detail below, this action "relates to" arbitration agreements falling under the Convention.

### A. The Grant Agreements Fall Under the Convention

22. For starters, the Grant Agreements contain an arbitration agreement that falls under the Convention because they (1) are in writing, (2) arise from a commercial relationship, (3) require arbitration in United States (a Convention signatory), and (4) include at least one signatory that is not an American citizen. *See Mullen Techs.*, 2020 U.S. Dist. LEXIS 116323, at *7; *Balen v. Holland Am. Line, Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009).

23. First, the Grant Agreements are written agreements Plaintiff signed that each contain "an arbitral clause in a contract or an arbitration agreement." *Mousebelt Labs Pte. LTD v. Armstrong*, 2023 U.S. Dist. LEXIS 97679, at *7 (N.D. Cal. May 24, 2023). Specifically, Section 12 of the Grant Agreements required that "[a]ny suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby (including claims for set-off and counter-claims and disputes regarding the validity, effect, interpretation or performance of all the legal relationships established by this Agreement or the LP Agreement or otherwise arising in connection with the foregoing) shall be finally settled by arbitration under the Rules of Arbitration of the International Chamber of Commerce" and "[t]he legal seat of arbitration shall be New York, New York". (*See* Haney Decl., Exs. A & D.) Thus, there is a written agreement to arbitrate.

24. Second, the Grant Agreements are commercial in nature because they relate to purchase and sale of shares in a private partnership for economic gain. Courts regularly find such agreements "arise from a commercial relationship." *See Trajkovski Inv. AB v. I.Am.Plus Elecs., Inc.*, 2021 U.S. Dist. LEXIS 247685, at *8 (C.D. Cal. Dec. 29, 2021) (finding agreement for purchase of stock commercial in nature under the Convention); *see also Mitchell v. Tillett*, 2016 U.S. Dist. LEXIS 153686, at *2 (N.D. Cal. Oct. 28, 2016) (agreement that flowed from course of employment was commercial under the Convention); *Flextronics Int'l USA, Inc. v. Murata Mfg. Co.*,

2020 U.S. Dist. LEXIS 158387, at *51 (N.D. Cal. Aug. 31, 2020) ("[T]he SMIA involves a commercial relationship, as it relates to 'business transactions.'").

25. Third, the Grant Agreements require arbitration in United States (Haney Decl., Exs. A & D.) (Haney Decl. ¶ 6, Ex. A § 12, Ex. D § 12)—a signatory to the Convention.

26. Fourth, the Removing Defendants, parties to the Grant Agreements, are both organized under the laws of the Cayman Islands and are therefore citizens of Cayman Islands. (*See* Haney Decl., Ex. A p. 1, Ex. B p. 1.) *See Mousebelt Labs Pte. LTD*, 2023 U.S. Dist. LEXIS 97679, at *8 ("MouseBelt is organized under the laws of Singapore and is therefore a citizen of Singapore.").

27. In sum, the Grant Agreements satisfy all four factors and fall under the Convention.

### B.  The State Action Relates to the Grant Agreements

28. The State Court Action also "relates to" the Grant Agreements. The Grant Agreements contain broad arbitration provisions requiring all disputes arising out of or in connection with the Agreements to be arbitrated under the Rules of Arbitration of the International Chamber of Commerce in New York. (*See* Haney Decl. ¶ 6, Ex. A § 12, Ex. D § 12.)

29. The Ninth Circuit applies an expansive construction to arbitration provisions, holding that federal courts will have jurisdiction so long as it is "conceivable that the arbitration clause will impact the disposition of the case." *Infuturia*, 631 F.3d at 1138; *Sunvalley Solar, Inc. v. CEEG (Shanghai) Solar*, 2015 U.S. Dist. LEXIS 125199, at *5-6 (C.D. Cal. Sept. 18, 2015) (arbitration agreement "conceivably affect[ed]" claims tied to the contract containing the arbitration agreement); *Mullis v. J.P. Morgan Chase & Co.*, 2024 U.S. Dist. LEXIS 221393, at *2 (S.D. Cal. Dec. 5, 2024) (denying Plaintiff Joseph Mullis's motion to remand to state court for defective removal and finding that the district court has subject matter jurisdiction under the Convention). Here, they do.

30. Plaintiff's claims are intertwined with the Grant Agreements. For example, Plaintiff alleges that with regard to his purported rights under the MEP, Defendants breached the underlying contract, failed to pay earned wages in the form of vested equity, breached implied covenant of good faith and fair dealing, engaged in conversion, committed civil theft, engaged in fraud and otherwise harmed Plaintiff. (*See* Complaint ¶¶ 52-69, 91-100, 117-153.) With regard to Plaintiff's purported pari passu co-investment rights, Plaintiff alleges that Defendants breached a written or implied contract, engaged in fraud and otherwise harmed Plaintiff. (*See* Complaint ¶¶ 70-90, 139-144.) But Plaintiff and Defendants never entered into any additional subscription agreements, and pursuant to Section 9 of the Grant Agreements, those agreements represented the entire agreement with respect to the subject matter of Plaintiff's equity economics. Whether an alleged separate pari passu right exists is a question that necessarily requires interpreting the Grant Agreements. *See Am. Chung Nam, LLC v. Mitsui O.S.K. Lines, Ltd.*, 2023 U.S. Dist. LEXIS 227709, at *15 (C.D. Cal. Dec. 19, 2023) ("Because the claims at issue . . . touch matters covered by the [agreement], they 'relate to' the arbitration agreement . . . under § 205."); *Infuturia*, 63 F.3d at 1138 (holding that 9 USC § 205 conveys "sweeping removal jurisdiction").

31. In any event, all of Plaintiff's claims concern alleged revised employment terms and purported equity rights that necessitate interpretation of the Grant Agreements. All of Plaintiff's claims thus form part of the same case or controversy concerning Plaintiff's purported rights under the Grant Agreements, and the Court has jurisdiction. *See* 28 U.S.C. § 1367; *Assad v. Josefsson*, 2018 U.S. Dist. LEXIS 102559, at *23-27 (C.D. Cal. June 19, 2018) (holding that district court has supplemental jurisdiction over all of plaintiff's claims because they share a common nucleus of operative fact with claims relating to arbitration agreements over which the district court has original jurisdiction).

32. Accordingly, the Court has federal question jurisdiction under the Convention pursuant to 9 U.S.C. § 203 and original jurisdiction over this Action pursuant to 28 U.S.C. § 1331. The case is thus removable any time before trial pursuant to 9 U.S.C. § 205.

## V.     COMPLIANCE WITH STATUTORY REQUIREMENTS

33. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders for the State Court Action served upon Removing Defendants or available on the Superior Court, County of San Diego website as of this date of removal are attached as **Exhibits 1** and **2**. For the Court's ease of reference, these documents consist respectively of: Plaintiffs' Summons and initial Complaint (**Exhibit 1**) and the remainder of the state court file (**Exhibit 2**).

34. Pursuant to 28 U.S.C. § 1446(d), a true and correct copy of this Notice of Removal will be promptly filed with the Superior Court of California, County of San Diego.

35. Pursuant to 28 U.S.C. § 1446(d), written notice of filing of this Notice of Removal will be given promptly to all adverse parties.

## RESERVATION OF RIGHTS AND DEFENSES

36. By filing this Notice of Removal, the Removing Defendants do not waive any defenses that may be available to it and reserves all such defenses. In addition, the Removing Defendants do not concede that Plaintiff has stated any claim upon which relief may be granted, or that Plaintiff is entitled to any relief of any nature.

37. The undersigned counsel for the Removing Defendants has read the foregoing and signs the Notice of Removal pursuant to 28 U.S.C. § 1446(a).

/ /
/ /
/ /
/ /
/ /

WHEREFORE, the Removing Defendants remove the State Court Action to this Court from the Superior Court of the State of California for the County of San Diego.

DATED: November 21, 2025

GLASER WEIL FINK HOWARD JORDAN & SHAPIRO LLP

By: */s/ Emil Petrossian*
Emil Petrossian
Alexander R. Miller

Robert Haney, Jr. (*Pro Hac Vice* Forthcoming)
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, NY 10019
Tel: (212) 812-0399
rhaney@foleyhoag.com

Leah Rizkallah (*Pro Hac Vice* Forthcoming)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210
Tel: (617) 832-1000
lrizkallah@foleyhoag.com

*Attorneys for Defendants*
NEOLOGY, INC., BRADLEY H. FELDMANN, OEP CAPITAL ADVISORS, L.P., OEP NEOLOGY CAYMAN, L.P., and OEP VI GENERAL PARTNER, L.P.