FILED

JAN 1 4 2026

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___OOC___ DEPUTY

1  Joseph N. Mullis
2  1152 Breakaway Drive
   Oceanside, California 92057
3  *Pro Se*

4

5

6

7

8        IN THE UNITED STATES DISTRICT COURT

9        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 JOSEPH N. MULLIS, a California individual, | Case No. 3:25-cv-03247-JES-BJW |
| 12 | **PLAINTIFF JOSEPH N. MULLIS'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |
| 13 Plaintiff, | |
| 14 v. | |
| 15 NEOLOGY, INC., a Delaware and California corporation; BRADLEY H. FELDMANN, a California individual; OEP Capital Advisors, L.P., a Delaware limited partnership; OEP Neology Cayman, L.P. a Cayman Islands limited partnership; OEP VI General Partner, L.P. a Cayman Islands limited partnership; and DOES 1 through 50, inclusive, | *[Filed concurrently Declaration of Joseph N. Mullis]* |
| 16 | Date:    January 28, 2026 |
| 17 | Time:    9:00 a.m. |
| 18 | Courtroom: 4B |
| 19 | Complaint Filed: September 25, 2025 |
| 20 Defendants. | Trial Date: None Set |

21

22  / / /

23  / / /

24  / / /

25  / / /

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    RELEVANT FACTUAL BACKGROUND .......................................................2

III.   ARGUMENT ........................................................................................................3

    A.   Defendants Have Not Shown An Agreement to Arbitrate Exists
        *Under the New York Convention* ...........................................................3

        1.   "Organized Under Cayman Law" Is Not Competent Proof
            of Foreign Citizenship of the *Limited Partnership*
            Defendants. .....................................................................................4

        2.   Defendants' reliance on *Mousebelt* is Inapposite Because
            *Mousebelt* Involved a Corporation. ..............................................6

        3.   Even If Defendants Pivot to Section 202's "Reasonable
            Relation" Prong Belatedly, They Still Lose: The
            Relationship Is Domestic.................................................................7

    B.   The "Broad" Arbitration Clause Does Not Cover All Claims...............8

        1.   The Convention Enforces Arbitration as Written But Does
            Not Expand the Scope of Arbitrable Matters. ...........................8

        2.   The Arbitration Clause Is Broadly Phrased, But Narrow in
            Subject: Disputes Tied to The Grant Agreements and
            Their Contemplated Transactions.................................................9

        3.   Defendants' "Touch Matters" Authorities Do Not Do the
            Work the Phrase Claims. ..............................................................9

        4.   The "Pari Passu" Claims Are a Clear Illustration Of
            Improper Scope Expansion......................................................10

        5.   At Most, Only The MEP/Grant-Rights Dispute Is Within
            Scope; And So, The Court Can (And Should) Sever. ..............12

    C.   Defendants' "Any Doubts" Rhetoric as in *Ferguson* And Other
        Cases Cannot Replace The Required Scope Showing........................13

    D.   Wholesale Referral to Arbitration Would Enforce an
        "Inoperative" Forum and Applicable Law Clause That Violates
        Labor Code § 925 and a Fundamental California Policy ...................14

PLAINTIFF'S OPPOSITION TO MOTION TO
COMPEL ARBITRATION AND STAY
PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

1.      Labor Code § 925 Makes Out-Of-California "Adjudication" Clauses of Employment Disputes Voidable by the Employee. .......................................................15

2.      Section 925's Statutory Invalidity Fits Comfortably Within Article II (3) As "Inoperative" (And, To the Extent the Clause is Unlawful Once Voided, "Null and Void"). ...................................................................................15

3.      Defendants' "Wholesale" Request Is Improper Because the Employment Claims Are Not Borne from the Grant Agreements. ...........................................................................16

E.     The Arbitration Clause Is "Null and Void" or "Inoperative" Under Article II (3) Because It Was Adopted Under Mistake or Fraud and Without Meaningful Assent ................................................17

F.     The Arbitration Clause in the MEP Documents Is Voidable Because It was Hidden and the Documents Were Signed Under Duress..................................................................................................21

G.     Neology, Feldmann, and OEP Capital Advisors Lack Standing to Enforce Arbitration: *Setty* Forecloses the "Everyone Gets Arbitration" Theory...............................................................................22

H.     Defendants Are Not Entitled to a Stay of the Case, and Any Stay Must Be Narrowly Tailored ...................................................25

IV.    CONCLUSION ...........................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Access Info. Mgmt. of Hawaii, LLC v. Shred-It Am., Inc.*,
No. CIV. 10-00622 JMS, 2010 WL 4642045 (D. Haw. Nov. 2, 2010) .................................................................................................. 7

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
785 F.3d 1320 (9th Cir. 2015) ................................................................ 4

*Balen v. Holland Am. Line, Inc.*,
583 F.3d 647 (9th Cir. 2009) .................................................................. 4

*Carden v. Arkoma Assocs.*,
494 U.S. 185 (1990) ............................................................................... 5

*Certain Underwriters at Lloyd's London v. Phelps Dunbar, LLP*,
No. LACV1705232JAKASX, 2018 WL 11305368 (C.D. Cal. June 6, 2018) ................................................................................................. 4

*CLMS Mgmt. Servs. LP v. Amwins Brokerage of Ga., LLC*,
8 F.4th 1011 (9th Cir. 2021) ................................................................ 17

*Cont'l 611 Fund LLC v. Certain Underwriters at Lloyds London*,
No. 25-CV-594-PP, 2025 WL 2924683 (E.D. Wis. Oct. 15, 2025) ................... 5

*CrossTalk Prods., Inc. v. Jacobson*,
65 Cal. App. 4th 631 (1998) ................................................................. 21

*Donovan v. RRL Corp.*,
26 Cal. 4th 261 (2001) .......................................................................... 20

*Druck Corp. v. Macro Fund Ltd.*,
290 F. App'x 441 (2d Cir. 2008) .......................................................... 17

*Escobar v. Celebration Cruise Operator, Inc.*,
805 F.3d 1279 (11th Cir. 2015) ...................................................... 14, 17

*Ferguson v. Corinthian Colls., Inc.*,
733 F.3d 928 (9th Cir. 2013) ................................................................ 13

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO MOTION TO
COMPEL ARBITRATION AND STAY
PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

*Freaner v. Valle,*
   No. 11CV1819 JLS MDD, 2011 WL 5596919 (S.D. Cal. Nov. 17, 2011) ..................................................................................................... 4

*Johnson v. Columbia Props. Anchorage, LP,*
   437 F.3d 894 (9th Cir. 2006) ............................................................... 5

*Kindred Nursing Ctrs. L.P. v. Clark,*
   581 U.S. 246 (2017) ......................................................................... 16

*Lander Co. v. MMP Inv., Inc.,*
   107 F.3d 476 (7th Cir. 1997) ............................................................... 8

*Martinez-Gonzalez v. Elkhorn Packing Co., LLC,*
   25 F.4th 613 (9th Cir. 2022) ...................................................... 21, 22

*Matabang v. Carnival Corp.,*
   630 F. Supp. 2d 1361 (S.D. Fla. 2009) ............................................... 8

*Mousebelt Labs Pte. Ltd. v. Armstrong,*
   674 F. Supp. 3d 728 (N.D. Cal. 2023) ................................................ 6

*Mundi v. Union Sec. Life Ins. Co.,*
   555 F.3d 1042 (9th Cir. 2009) ........................................................... 23

*Nationwide Agribusiness Ins. Co. v. Buhler Barth GMBH,*
   2015 U.S. Dist. LEXIS 147717 (E.D. Cal. Oct. 29, 2015) ................. 9

*Optimum Prods. v. HBO,*
   839 F. App'x 75 (9th Cir. 2020) ........................................................ 9

*Perez v. Uline, Inc.,*
   157 Cal. App. 4th 953 (2007) ............................................................ 21

*Peters v. Amazon Servs. LLC,*
   2 F. Supp. 3d 1165 (W.D. Wash. 2013) ............................................. 11

*Rajagopalan v. NOTEWORLD, LLC,*
   718 F.3d 844 (9th Cir. 2013) ................................................... 22, 23, 24

*Rich & Whillock, Inc. v. Ashton Dev., Inc.,*
   157 Cal. App. 3d 1154 (1984) ..................................................... 21, 22

*Rosenthal v. Great Western Fin. Sec. Corp.,*
   14 Cal. 4th 394 (1996) ..................................................................... 20

- v -

PLAINTIFF JOSEPH N. MULLIS'S
OPPOSITION TO MOTION TO COMPEL
ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

*Setty v. Shrinivas Sugandhalaya LLP*,
　 3 F.4th 1166 (9th Cir. 2021) ........................................................22, 23, 24

*Simula, Inc. v. Autoliv, Inc.*,
　 175 F.3d 716 (9th Cir. 1999) ......................................................................9

*Soaring Wind Energy, L.L.C. v. Catic USA Inc.*,
　 946 F.3d 742 (5th Cir. 2020) ......................................................................7

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
　 925 F.2d 1136 (9th Cir. 1991) ............................................................18, 21

*Youssefzadeh v. Global-Ip Cayman*,
　 2018 U.S. Dist. LEXIS 239589 (C.D. Cal. Jul. 30, 2018) ........................9

**Statutes**

9 U.S.C. § 3 .......................................................................................................25

9 U.S.C. § 202 .............................................................................................*passim*

9 U.S.C. § 206 .............................................................................................9, 14

Cal. Civ. Code § 1567 ..................................................................................17, 18

Cal. Civ. Code §§ 1567–1568 .....................................................................21, 22

Cal. Civ. Code § 1577 ..................................................................................19, 20

Cal. Civ. Code § 1689 ........................................................................................19

Cal. Civ. Code § 1689(b)(1) ...........................................................19, 20, 21, 22

Cal. Lab. Code § 925 ...................................................................................*passim*

Cal. Lab. Code § 925(a) .....................................................................................16

Cal. Lab. Code § 925(a)–(d) ..............................................................................17

Cal. Lab. Code § 925(a)(1)–(2) ..........................................................................15

Cal. Lab. Code § 925(b) ...............................................................................15, 16

Cal. Lab. Code § 925(d) ...............................................................................15, 16

PLAINTIFF JOSEPH N. MULLIS'S
OPPOSITION TO MOTION TO COMPEL
ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3    Defendants ask this Court to do far more than "enforce an arbitration

4    agreement." They invoke Chapter 2 of the FAA and the New York Convention to

5    export a California employment dispute about wages, severance, retaliation,

6    reimbursement, unfair competition, and a pari passu co-investment promise to a New

7    York arbitration under Cayman Islands law, based on paperwork presented years

8    after Plaintiff began work. The motion fails at the threshold, on scope, on standing,

9    and under Article II(3) of the New York Convention.

10    First, Defendants have not carried their burden to show the agreement "falls

11    under" the Convention. The Convention applies only if Defendants prove the foreign-

12    party or foreign-nexus requirement in 9 U.S.C. § 202. They do not. Their entire

13    showing rests on the assertion that certain "OEP" entities were "organized under

14    Cayman law," without evidence of foreign citizenship for the non-corporate entities,

15    identification of the partners or members whose citizenship controls, or any

16    meaningful foreign nexus such as foreign property or performance. A contractual nod

17    to Cayman law is not a § 202 nexus, and argument cannot substitute for proof.

18    Second, even if the Court reaches scope, Defendants' "vacuum cleaner" theory

19    is wrong. The Grant Agreements concern a narrow subject: the MEP incentive

20    partnership interest and the mechanics of that grant. They do not silently override the

21    parties' earlier Employment Agreement which contains an express California

22    exclusive-jurisdiction and San Diego venue clause, or convert every employment

23    claim into a Convention-arbitrable dispute merely because the Complaint references

24    equity compensation. At most, Defendants identify a discrete MEP/vesting dispute;

25    the remaining claims arise from independent statutory duties and the Employment

26    Agreement and can be resolved without interpreting the Grant Agreements.

27    Third, the motion overreaches on standing. Neology, Feldmann, and OEP

28    Capital Advisors are not signatories and cannot compel arbitration of non-grant

PLAINTIFF'S OPPOSITION TO MOTION TO
COMPEL ARBITRATION AND STAY
PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

4938-1005-5560

1   employment claims via equitable estoppel. Plaintiff is not seeking to enforce the

2   Grant Agreements while avoiding their burdens; he primarily asserts statutory and

3   contractual rights that do not require construing the Grant Agreements. The Ninth

4   Circuit requires claims that "implicate" and are "intertwined" with the agreement

5   containing the arbitration clause, not merely factually adjacent.

6        Fourth, Defendants' demand for wholesale referral and a blanket stay is barred

7   by Article II(3) to the extent it would enforce an inoperative forum regime against a

8   California employee in violation of Labor Code § 925. The record also supports

9   formation defenses: the agreements were presented after Plaintiff had already

10  performed under renewed employment terms, and Plaintiff entered into them based

11  on mistake and/or fraud in the execution and under duress, faced with forfeiture of

12  benefits he had already earned, including after assigning patents to Neology.

13       Accordingly, the Court should deny the motion. At minimum, it should deny

14  any request to compel arbitration or stay proceedings as to the non-MEP claims, or

15  portions of such claims that can be adjudicated without deciding anything related to

16  the MEP. If the Court orders arbitration of discrete MEP issues, it should tailor relief

17  to allow the non-MEP claims to proceed and, if helpful, require Plaintiff to amend

18  within 14 days to segregate any MEP claims from the non-arbitrable causes of action.

19  **II.    RELEVANT FACTUAL BACKGROUND**

20       Plaintiff executed an employment agreement (the "Employment Agreement")

21  with Defendant Neology, Inc. in July 2014. (Mullis Decl., ¶¶ 2–3.) Plaintiff primarily

22  resided and worked in California during the relevant period. (*Id.*, ¶¶ 2, 20.) Following

23  acquisition of interests in Neology, Inc., in a 2:42 a.m. email on August 16, 2017,

24  OEP principal and Neology, Inc. member of the board of directors Joerg Zirener

25  wrote to Mr. Mullis: " … we would propose to raise your fix comp … and your bonus

26  …. In addition you *will receive* 1.5% of the MEP pool. Furthermore, we will offer

27  you the opportunity to directly co-invest pari-passu to OEP into Neology." (*Id.*, ¶4,

28  **Exhibit 1**)

PLAINTIFF'S OPPOSITION TO MOTION
TO COMPEL ARBITRATION AND STAY
PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

4938-1005-5560

1
2
3
4
5
6
7
8
9
10

> **From:** Joerg Zirener <joerg.Zirener@oneequity.com>
> **Sent:** Wednesday, August 16, 2017 2:42 AM
> **To:** joem@neology-rfid.com <joem@neology-rfid.com>
> **Cc:** Francisco Martinez de Velasco <fmartinezl@neology-rfid.com>
> **Subject:** Follow-up
>
> Joe,
>
> Thanks for the open and good discussion yesterday. You are one of the absolute key guys to make our joint investment in Neology/3M successful and create significant value going forward.
>
> I have discussed with Francisco and we would propose to raise your fix comp from $▇▇▇▇▇▇ and your bonus from $▇▇▇▇▇. In addition you will receive 1.5% of the MEP pool. Furthermore, we will offer you the opportunity to directly co-invest pari-passu to OEP into Neology. We sincerely hope that you find this package, which is an appreciation of your contribution in the past as well as a reflection of what we expect going forward, attractive.
>
> If you give us the green light, we will install as of September.
>
> Looking forward continue working together,
> Joerg

11
12
13
14
15
16
17
18
19
20
21
22

Plaintiff accepted the renewed employment offer and continued working past the September 1, 2017 install date. (*Id.*, ¶5) Plaintiff understood the MEP to be connected to his ongoing employment and continued performance. (*Id.*, ¶¶5-6) Several months later, Defendants presented Plaintiff with the May 24, 2018 Incentive Partnership Interest Grant Agreement (the "First Grant Agreement"). (Mullis Decl., ¶¶ 7, 23, **Exhibit 2**. Plaintiff had no meaningful choice but to sign or risk forfeiting the bargain he had reached months earlier. (Mullis Decl., ¶8) Years later, Defendants presented Plaintiff with the March 1, 2022 Incentive Partnership Interest Grant Agreement (the "Second Grant Agreement"). (Mullis Decl., ¶7, 23, Exhibit 3). As before, Plaintiff had no meaningful choice, having long accepted and performed since August 2017. (Mullis Decl., ¶4-5,7-8) Plaintiff signed all agreements in the United States while residing and working in California. (Mullis Decl., ¶¶ 8, 20.)

23

## III.  ARGUMENT

24
25

### A.  Defendants Have Not Shown An Agreement to Arbitrate Exists Under the New York Convention

26
27
28

Defendants would like the Court to do something quite specific: compel arbitration under Chapter 2 of the FAA (the New York Convention). But this is not an automatic exercise upon request; Defendants bear the burden to prove the

4938-1005-5560

arbitration agreement "falls under the Convention." *Freaner v. Valle*, No. 11CV1819 JLS MDD, 2011 WL 5596919, at *2–3 (S.D. Cal. Nov. 17, 2011); *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). Section 205's jurisdictional/removal inquiry is separate from enforceability. *Certain Underwriters at Lloyd's London v. Phelps Dunbar, LLP*, No. LACV1705232JAKASX, 2018 WL 11305368, at *5–6 (C.D. Cal. June 6, 2018) On a motion to compel arbitration, only after jurisdiction is determined may the court address enforceability. *Id.*

To "fall under" the Convention, Defendants must show: "(1) there is an agreement in writing …; (2) the agreement provides for arbitration in the territory of a signatory …; (3) the agreement arises out of a legal relationship … considered commercial; and (4) a party to the agreement is not an American citizen, or the commercial relationship has some reasonable relation with one or more foreign states." *Balen v. Holland Am. Line, Inc.*, 583 F.3d 647, 654–55 (9th Cir. 2009).

Plaintiff does not meaningfully dispute elements (1)–(3) *for purposes of this motion*. The dispute is element (4), and that is where Defendants' showing collapses. Congress codified the foreign-party/foreign-nexus limitation in 9 U.S.C. § 202. An agreement "entirely between citizens of the United States" is deemed not to fall under the Convention unless the relationship involves property abroad, envisages performance or enforcement abroad, or has some other "reasonable relation" with a foreign state. 9 U.S.C. § 202. Defendants had two possible paths: (1) prove that a party is not a U.S. citizen, or (2) if all parties are U.S. citizens, prove a concrete foreign relationship of the kind § 202 requires. Defendants have done neither.

1.    "Organized Under Cayman Law" Is Not Competent Proof of Foreign Citizenship of the *Limited Partnership* Defendants.

Defendants' entire element (4) showing is essentially: "the OEP Signatories are organized under Cayman law, therefore they are Cayman citizens." That is not evidence sufficient to meet Defendants' prima facie burden; it is counsel's assertion, and it is legally incomplete for the entities at issue. Section 202 defines corporate

4938-1005-5560

1    citizenship for Convention purposes: a corporation is a U.S. citizen if it is
2    incorporated in the United States or has its principal place of business here. 9 U.S.C.
3    § 202. Thus, even in the corporate context, "organized under foreign law" does not
4    end the inquiry; principal place of business matters too. Defendants submit no
5    evidence that any relevant defendant is a corporation. Nor could they. And even if
6    they had, Defendants submit no competent evidence of any relevant entity's principal
7    place of business. Their showing falls far short of establishing non-U.S. citizenship.

8        For *non-corporate* entities (including the limited partnership Defendants here),
9    Defendants' "place of organization" shortcut is the wrong tool. The Supreme Court
10   has repeatedly held that unincorporated entities are not treated like corporations for
11   citizenship purposes; rather, their citizenship turns on the citizenship of their
12   members or partners. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990). The
13   Ninth Circuit is in accord. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894,
14   899 (9th Cir. 2006). Here, Defendants offer no declaration identifying any limited
15   partnership's partners or members (general or limited), much less the citizenship of
16   those persons or entities. Without that, Defendants have not carried their threshold
17   burden to establish they are not U.S. citizens within the meaning of element (4).

18       Courts confronting Convention arguments have rejected the same kind of
19   "trust us, there is a foreign member" approach. For example, in a Convention-
20   removal dispute involving Lloyd's syndicates, the court noted the argument that
21   defendants must identify the citizenship of all underwriting members because the
22   syndicate is a citizen of every place any member is a citizen, and absent that showing
23   it was "far from certain" Lloyd's was foreign for Convention purposes. *Cont'l 611*
24   *Fund LLC v. Certain Underwriters at Lloyds London*, No. 25-CV-594-PP, 2025 WL
25   2924683, at *4, 8 (E.D. Wis. Oct. 15, 2025). The same principles apply here:
26   Defendants do not get Chapter 2 jurisdiction by insinuation or conclusory attorney
27   assertions. They must prove foreign citizenship through competent evidence before
28   the Court may find the Convention applies.

- 5 -

PLAINTIFF'S OPPOSITION TO MOTION
TO COMPEL ARBITRATION AND STAY
PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

4938-1005-5560

1    2.    Defendants' reliance on *Mousebelt* is Inapposite Because

2    *Mousebelt* Involved a Corporation.

3    Defendants cite *Mousebelt Labs Pte. Ltd. v. Armstrong*, 674 F. Supp. 3d 728,

4    735 (N.D. Cal. 2023) for the proposition that being "organized under" foreign law

5    establishes foreign citizenship. But Defendants' own framing illustrates the problem:

6    Mousebelt involved *a Pte. Ltd. corporation* (a corporate form), and § 202 contains

7    an express corporate-citizenship rule (including principal place of business). 9 U.S.C.

8    § 202. Nothing in § 202 creates a parallel "organized-under" citizenship rule for

9    limited partnerships such as those at issue here, and Carden and analogous authorities

10   across multiple circuits caution against importing corporate citizenship rules into the

11   non-corporate context. Even taking Defendants' description of Mousebelt at face

12   value, it does not do the work Defendants assign to it here.

13   Here, the evidence before the Court shows that Plaintiff, a citizen of California

14   and the United States, is (by virtue of the Grant Agreements) a partner in the alleged

15   entities. (Mullis Decl., ¶9) As a partner, his United States citizenship attaches to the

16   entities. In addition, Defendants' own documents submitted with their moving papers

17   explicitly state that "Neology, Inc." (a *United States* citizen) is the party that entered

18   into the "Incentive Partnership Interest Grant Agreements" with Plaintiff. **See Dkt.**

19   **16-4, p. 2 of 13 and p. 3 of 13** (Neology's proposed separation agreement with Mr.

20   Mullis identifying Neology, Inc. as the "Company" and referring to the "Incentive

21   Partnership Interest Grant Agreements between Employee and the Company, dated

22   May 24, 2018 and March 1, 2022.") If Neology, a United States entity, is the party

23   that supposedly entered into the subject agreements *as presented*, there is no

24   legitimate non-U.S. entity that is a party to the alleged agreements requiring

25   arbitration. Defendants offer no competent evidence to the contrary.

26   And even if Defendants attempt to pivot now despite failing to make the

27   necessary showing in their opening papers, they still fail to demonstrate that all

28   partners or members of the limited partnership Defendants are non-U.S. citizens.

PLAINTIFF'S OPPOSITION TO MOTION
TO COMPEL ARBITRATION AND STAY
PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

4938-1005-5560

1  Because Defendants rely on unproven foreign citizenship and chose to submit no
2  competent evidence with their opening motion, they cannot meet their burden
3  through argument alone. Accordingly, the Court should disregard any attempt to cure
4  a missing prima facie showing on reply. In the unlikely event the Court is inclined to
5  permit new evidence on reply, it should authorize limited jurisdictional discovery and
6  allow Plaintiff a targeted response to any later showing before ruling.

7            3.    Even If Defendants Pivot to Section 202's "Reasonable Relation"
8                  Prong Belatedly, They Still Lose: The Relationship Is Domestic.

9            Defendants also make no attempt to satisfy the second avenue under element
10  (4), i.e., the reasonable-relation prong. Section 202 requires more than a foreign label;
11  it requires that the relationship itself involve property abroad, performance or
12  enforcement abroad, or another meaningful foreign relation. 9 U.S.C. § 202. Section
13  202 concerns the "legal relationship" from which the right to arbitration arises, not
14  the parties' general relationship. 9 U.S.C. § 202; *Soaring Wind Energy, L.L.C. v.*
15  *Catic USA Inc.*, 946 F.3d 742, 752 (5th Cir. 2020). The "legal relationship" is thus
16  the relationship out of which the arbitration agreement or the arbitration award arises.
17  *Id.* The focus is the foreign character of the agreement at issue, not the parties'
18  general relationship. *Id.* For example, "[i]t is not enough … that one party, though a
19  U.S. citizen, should happen to bear foreign corporate parentage." *Id.* And it is not
20  enough that the governing law is foreign. *Access Info. Mgmt. of Hawaii, LLC v.*
21  *Shred-It Am., Inc.*, No. CIV. 10-00622 JMS, 2010 WL 4642045, at *6 (D. Haw. Nov.
22  2, 2010) (rejecting argument that an agreement was reasonably related to Canada
23  simply because a confidentiality agreement applied the law of Ontario, Canada.)

24            Here, as alleged in the Complaint and reflected in the agreements' execution
25  and performance history, there is no reasonable foreign nexus: Plaintiff worked in
26  the United States; the agreements were signed and witnessed in the United States by
27  all parties or their representatives; the agreements required notice in the United
28  States; the agreements in part applied United States securities laws and Delaware law

- 7 -

4938-1005-5560

1  for certain aspects; the agreements referenced Plaintiff's employment, which did not

2  occur in the Cayman; the alleged breaches and damages arise from a U.S.-based

3  employment relationship; and *Defendants purported to perform their Grant*

4  *Agreement obligations through U.S. payroll/W-2 payments originating from the*

5  *United States and from Neology, Inc.* (Mullis Decl., ¶¶2, 12, 13,14, 15,16,17, 20)

6      There is no identified foreign property being transferred, no contemplated

7  foreign performance, and no foreign enforcement component. (*Id.*) Compare

8  *Matabang v. Carnival Corp.*, 630 F. Supp. 2d 1361, 1367 (S.D. Fla. 2009) (finding

9  that the relationship between a cruise ship touring the Bahamas and a single on it was

10  not reasonably related to the Bahamas because the legal relationship, defined by the

11  agreement, was only superficially connected to the Bahamas), with *Lander Co. v.*

12  *MMP Inv., Inc.*, 107 F.3d 476, 480–81 (7th Cir. 1997) (finding that the Convention

13  applied to an arbitration agreement between two U.S. entities where the agreement

14  was for distribution of products in Poland). Because Defendants made no effort to

15  show a qualifying foreign relation, the Court should reject the conclusory showing

16  and deny the motion. If the Court is inclined to entertain a belated showing or

17  argument, it should permit a response to any such later presentation before ruling.

18      **B.    The "Broad" Arbitration Clause Does Not Cover All Claims**

19      Defendants try to turn a targeted equity-grant arbitration clause into a vacuum

20  cleaner. They argue that anything Plaintiff alleges in the Complaint about wages,

21  severance, retaliation, credit-card misuse, failure to reimburse, unfair competition

22  theories, and a pari passu co-investment "opportunity" offered as part of Plaintiff's

23  employment and accepted by Plaintiff (but was never honored) gets swept into

24  arbitration because the clause uses words like "in connection with." That is not how

25  arbitration works. And it is not how the New York Convention works.

26          1.    The Convention Enforces Arbitration as Written But Does Not

27              Expand the Scope of Arbitrable Matters.

28      Chapter 2 of the FAA authorizes a court to compel arbitration "in accordance

- 8 -

PLAINTIFF'S OPPOSITION TO MOTION
TO COMPEL ARBITRATION AND STAY
PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

4938-1005-5560

1    with the agreement." 9 U.S.C. § 206. The Convention is a pro-arbitration
2    enforcement regime, but it is not a license to rewrite the parties' bargain. Courts still
3    must determine scope, whether a particular claim is, in whole or in part, one the
4    parties agreed to arbitrate. Put differently, the "broad policy favoring arbitration" is
5    not to arbitrate whatever one side wishes, especially where the dispute falls outside
6    the arbitration clause invoked under the Convention. The pertinent question is
7    therefore simple: What disputes do these Grant Agreements actually cover? The
8    question is not what claims could be loosely or theoretically linked to them.

9            2.    <u>The Arbitration Clause Is Broadly Phrased, But Narrow in</u>
10                  <u>Subject: Disputes Tied to The Grant Agreements and Their</u>
11                  <u>Contemplated Transactions.</u>

12           Defendants correctly quote Section 12 of the Grant Agreement, which requires
13    arbitration for proceedings based on any matter arising out of or "in connection with"
14    the Grant Agreements or the "transactions contemplated" by them (including
15    disputes about the "validity, effect, interpretation or performance" of the legal
16    relationships the Agreements establish). That language is broad within the universe
17    the Grant Agreements create: the incentive partnership interest, vesting schedule,
18    repurchase and forfeiture mechanics, and the parties' rights and obligations under the
19    instruments. It does not convert the Grant Agreements into an arbitration umbrella
20    for every statutory claim, contract claim, or tort that happens to be pleaded in the
21    complaint. Defendants cite no authority supporting the scope of expansion they seek.

22           3.    <u>Defendants' "Touch Matters" Authorities Do Not Do the Work</u>
23                  <u>the Phrase Claims.</u>

24           Defendants lean heavily on *Simula, Inc. v. Autoliv, Inc*., 175 F.3d 716, 720 (9th
25    Cir. 1999), *Nationwide Agribusiness Ins. Co. v. Buhler Barth GMBH*, 2015 U.S. Dist.
26    LEXIS 147717, at *16 (E.D. Cal. Oct. 29, 2015), *Optimum Prods. v. HBO*, 839 F.
27    App'x 75, 78 (9th Cir. 2020) and *Youssefzadeh v. Global-Ip Cayman*, 2018 U.S. Dist.
28    LEXIS 239589, at *15 (C.D. Cal. Jul. 30, 2018) to argue that because the clause uses

- 9 -

4938-1005-5560

1  "in connection with," the claims need only "touch matters" covered by the contract
2  and can be merely "collateral" to the relationship for the Court to order wholesale
3  arbitration. Even taking those cases at face value, they stand for an unremarkable
4  proposition: a claim is within scope when it depends on, is predicated on, or cannot
5  be adjudicated without the contract's performance or interpretation particularly
6  where the contract is the source of the duty allegedly breached.

7      Those cases do not hold that (1) a later equity grant agreement silently imports
8  arbitration into a separate employment agreement that governs employment disputes;
9  (2) an equity grant's arbitration clause captures statutory retaliation claims, wage
10 claims, or tort claims that are complete without construing the equity grant; (3) any
11 dispute factually adjacent to "compensation" is necessarily arbitrable under the Grant
12 Agreements; or (4) a plaintiff's pleading choices determine what a court must compel
13 to arbitration under the New York Convention. Yet that what Defendants argue.

14     Defendants' own parsing of the complaint exposes the overreach. They group
15 the claims into categories with some allegedly "directly implicating" the Grant
16 Agreements, others supposedly requiring determination of the "existence, value,
17 vesting," and then a third category (pari passu) that Defendants acknowledge is not
18 even mentioned and must be pulled in through an integration-clause theory. That is
19 not a scope analysis; it is a gravity argument: equity compensation is mentioned
20 somewhere in the Complaint, so everything must be resolved in arbitration. Courts
21 focus on the contract and do not compel arbitration on gravity.

22          4.   The "Pari Passu" Claims Are a Clear Illustration Of Improper
23               Scope Expansion.

24     Defendants effectively concede the key point: the arbitration clauses do not
25 expressly apply to pari passu rights. Instead, Defendants try to bootstrap those claims
26 through the Grant Agreements' integration clause. That argument fails for three
27 independent reasons.

28     First, integration clauses define what the contract is; they do not expand what

- 10 -

4938-1005-5560

it arbitrates. The integration language Defendants cite says the Grant Agreements "contain the entire agreement … with respect to the subject matter contained herein" and "supersede[] all prior agreements or understandings … relating to such subject matter." That clause is not a magic portal importing unrelated promises about pari passu co-investment into the "subject matter contained herein." If anything, it does the opposite: it prevents parties from asserting side deals about the same subject. The integration clause does not transform a distinct co-investment concept mentioned nowhere in the Grant Agreements into a "transaction contemplated" by an incentive partnership interest grant.

Second, Defendants' theory collapses the very "subject matter" boundary it claims to respect. Defendants broadly assert the subject matter is "equity compensation" and therefore pari passu is "part and parcel" of it. But the Grant Agreements are not generalized equity-compensation master agreements; they are incentive partnership interest grants with detailed vesting and repurchase and forfeiture terms. A separate right to co-invest alongside OEP into Neology is not the same thing as an employer-granted incentive partnership interest. If "equity compensation" is defined so broadly that it swallows every alleged investment right, the "subject matter" limitation becomes meaningless, and the integration clause becomes a one-way ratchet to arbitration for anything tangentially equity-adjacent. Courts do not read contracts to render their limiting language meaningless.

Third, Defendants' argument reads like a merits defense, i.e., that the employment agreement or prior promises are "superseded." It does not read like a scope showing that Plaintiff "agreed to arbitrate" *pari passu* or other employment claims. Defendants repeatedly assert that an arbitrator must decide whether the integration clause "superseded" the alleged pari passu promise. But that assumes the pari passu dispute is already within the arbitration clause. "This claim is barred" is not a scope test. If a party could force arbitration of any claim by asserting a contract defense, the scope inquiry would vanish. Defendants' reliance on *Peters v. Amazon*

PLAINTIFF'S OPPOSITION TO MOTION
TO COMPEL ARBITRATION AND STAY
PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

4938-1005-5560

1    *Servs. LLC*, 2 F. Supp. 3d 1165, 1173 (W.D. Wash. 2013) is misplaced on its own
2    terms: that case does not hold that an integration clause can drag unrelated disputes
3    into arbitration simply because the plaintiff alleges both in one pleading.

4        In sum, like the *pari passu* claims, the bulk of Plaintiff's claims do not concern
5    the Grant Agreements in any respect. Defendants cannot identify any provision of
6    the Grant Agreements in which Plaintiff purportedly agreed to arbitrate disputes
7    about severance, bonus compensation, unlawful use of Plaintiff's credit card, or
8    termination under pretext. That is not accidental. Defendants cannot point to such
9    provisions because no clause in the Grant Agreements purports to override Plaintiff's
10   statutory rights or any rights Plaintiff held independent of the Grant Agreements.
11   Indeed, Defendants acknowledge that Plaintiff's UCL theory includes use of
12   Plaintiff's personal credit card (conduct Defendants concede is "not relevant" to the
13   motion) yet they still insist the UCL claim should be sent to arbitration "in its
14   entirety." (Dkt 16-1, fn.1) That is not an argument for arbitration under the New York
15   Convention; it is a demand for a result the agreement does not authorize. A credit-
16   card misuse theory does not "arise out of" an incentive partnership interest grant
17   simply because both appear in the same pleading.

18       For these reasons, the Court should reject the broad arbitration request.

19               5.    At Most, Only The MEP/Grant-Rights Dispute Is Within Scope;
20                     And So, The Court Can (And Should) Sever.

21       While Plaintiff contends none of the claims are subject to arbitration,
22   Defendants at least stand on firmer ground as to claims or portions of claims that may
23   require construing the Grant Agreements, e.g., a claim expressly seeking "full vested
24   equity" under the "written contract governing Plaintiff's MEP rights." But the
25   Complaint also pleads distinct duties and disputes that do not arise from the Grant
26   Agreements at all, starting with the Employment Agreement's severance and bonus
27   obligations, which are governed by the Employment Agreement in their own right.
28       Specifically, the Complaint alleges a separate written Employment Agreement

- 12 -

4938-1005-5560

1   (2014) containing a promise of "six months' severance" and "an annual performance-

2   based bonus." Those are classic wage and contract obligations that can be adjudicated

3   (and breached) without interpreting an equity-grant instrument. The Complaint also

4   alleges that the MEP offer was part of the renewal or extension of the Employment

5   Agreement and thus, at minimum, was separately and independently encompassed

6   by the Employment Agreement's provisions governing employment-related claims.

7   And there is nothing in Section 12 of the Grant Agreements that states that "any

8   employment dispute" must be resolved through arbitration under the Convention.

9       In sum, if the Court is inclined to compel arbitration at all, the proper approach

10   is to compel arbitration only for the disputes the arbitration clause actually covers

11   and allow the remainder to proceed. The Convention's "in accordance with the

12   agreement" mandate points in the same direction.

13      **C.**  **Defendants' "Any Doubts" Rhetoric as in *Ferguson* And Other**

14           **Cases Cannot Replace The Required Scope Showing.**

15       Defendants' fallback argument is the familiar line that any doubts concerning

16   the scope of arbitrable issues should be resolved in favor of arbitration. Dkt. 16-1,

17   pp. 13-25 (citing *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir.

18   2013)). While that is a correct position as a general statement, it is not a bright line

19   rule that overrides applicable law. Indeed neither Ferguson nor similar cases extend

20   the scope of arbitrable disputes to those that the parties did not expressly agree to

21   arbitrate. Ferguson itself states that "the scope of an arbitration agreement is a matter

22   of contract" and that court "must look to the express terms of the agreements at issue"

23   to determine whether the partis agreed to arbitrate a particular dispute. Id., at 938.

24       Here, Defendants' motion manufactures "doubt" by redefining the Grant

25   Agreements' "subject matter" as essentially all compensation and all employment-

26   related disputes simply because Plaintiff alleges causes of action that in one form or

27   another mention the MEP issue. That is not ambiguity. That is complete revision that

28   completely ignores the Employment Agreement which independently states:

4938-1005-5560

1  "Employee and Employer consent to the exclusive jurisdiction of the courts of the

2  State of California for the purpose of resolving all issues of law, equity, or fact,

3  arising out of or in connection with [the Employment] Agreement" and that any

4  claims for interpretation, breach or enforcement of the Employment Agreement shall

5  be brought in the courts of the State of California. (Dkt. 16-3, p. 9)

6      In sum and substance, the Grant Agreements cover the MEP/grant-rights

7  dispute (if at all) only. They do not cover Plaintiff's other claims or distinct non-MEP

8  components of mixed claims. The Convention authorizes compelling arbitration only

9  "in accordance with the agreement," not in accordance with the movant's preferred

10  packaging of the complaint. 9 U.S.C. § 206. Based on the foregoing, if the Court is

11  inclined to grant the motion, it should only grant the motion as to portions of the

12  MEP/Grant-Agreement claims only, and should deny the motion as to *pari passu* and

13  other employment/statutory/tort claims. If the court is disinclined to split up the

14  claims as pled, Plaintiff is amenable to amending the Complaint to specifically

15  delineate any aspects the Court believes are subject to mandatory arbitration.

16      **D.**   **Wholesale Referral to Arbitration Would Enforce an "Inoperative"**

17          **Forum and Applicable Law Clause That Violates Labor Code § 925**

18          **and a Fundamental California Policy**

19      Article II (3) of the New York Convention directs courts to refer parties to

20  arbitration unless the agreement is "null and void, inoperative or incapable of being

21  performed." Courts construe that exception narrowly and typically limit "null and

22  void" to contract defenses that can be applied neutrally in international cases (e.g.,

23  fraud, duress, mistake, waiver). See, e.g., *Escobar v. Celebration Cruise Operator,*

24  *Inc.*, 805 F.3d 1279, 1286–87 (11th Cir. 2015) (explaining Article II(3)'s "null and

25  void" clause is limited to standard contract defenses). But narrow application does

26  not mean never. And this is the kind of case where the exception applies, because

27  Defendants seek a wholesale referral to arbitration of wages, severance, statutory

28  employment protections, and tort claims under an agreement that does not authorize

- 14 -

4938-1005-5560

1  that result and that cannot lawfully operate in the manner Defendants demand.

2          1.    <u>Labor Code § 925 Makes Out-Of-California "Adjudication"</u>

3          <u>Clauses of Employment Disputes Voidable by the Employee.</u>

4      California Labor Code § 925 states, in plain terms, that an employer "shall not"

5  require an employee who primarily resides and works in California, as a condition of

6  employment, to agree to a provision that: (1) requires the employee to "adjudicate

7  outside of California a claim arising in California," or (2) deprives the employee of

8  California's substantive protections for a controversy arising in California. Cal. Lab.

9  Code § 925(a)(1)–(2). The statute then supplies the consequence Defendants want to

10  ignore: any such provision is "voidable by the employee," and once voided, "the

11  matter shall be adjudicated in California and California law shall govern." Cal. Lab.

12  Code § 925(b). Critically, § 925 defines "adjudication" to include both litigation and

13  arbitration. Cal. Lab. Code § 925(d). Because Defendants ask this Court to compel

14  arbitration of Plaintiff's employment-related claims in an out-of-California forum (or

15  under non-California law), as the Grant Agreements purportedly require, Defendants

16  are asking the Court to enforce what § 925 forbids.

17          2.    <u>Section 925's Statutory Invalidity Fits Comfortably Within</u>

18          <u>Article II (3) As "Inoperative" (And, To the Extent the Clause is</u>

19          <u>Unlawful Once Voided, "Null and Void").</u>

20      Defendants' likely response is to invoke "internationally recognized defenses"

21  and insist that § 925 is merely a local "public policy" argument and therefore off-

22  limits at the referral stage. That reframes the issue incorrectly.

23      <u>First</u>, Labor Code § 925 is not a free-floating "policy objection" to arbitration.

24  It is a statutory contract defense and a legislatively defined rule of contract

25  enforceability that renders certain out-of-state adjudication provisions voidable at the

26  employee's election and unenforceable once the employee invokes the statute. Cal.

27  Lab. Code § 925(b). Contract invalidity, illegality, and voidability are not parochial

28  "arbitration hostility"; they are mainstream contract doctrines that international

PLAINTIFF'S OPPOSITION TO MOTION
TO COMPEL ARBITRATION AND STAY
PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

4938-1005-5560

1  tribunals understand and apply.

2      Second, Labor Code § 925 is not arbitration-discriminatory. It applies equally

3  to litigation and arbitration. Cal. Lab. Code § 925(d). That matters because FAA

4  preemption doctrine targets rules that single out arbitration for disfavored treatment.

5  *Kindred Nursing Ctrs. L.P. v. Clark*, 581 U.S. 246, 251–52 (2017). Section 925 does

6  the opposite: it regulates forum and choice-of-law provisions for California

7  employment disputes across the board. In Convention terms, compelling Defendants'

8  requested wholesale arbitration of California employment claims in a non-California

9  forum would enforce a clause that is, by statute, voidable and, once invoked,

10  unenforceable, i.e., "inoperative." Plaintiff was a resident of California at the time of

11  signing the Grant Agreements (as reflected by the signatures on the documents

12  Defendants allege require arbitration), and Plaintiff primarily worked in California at

13  the relevant time. (Mullis Decl., ¶¶ 2, 12, 20.) Prior to Defendants' effort to remove

14  this action, Plaintiff expressly invoked § 925. (Mullis Decl., ¶ 21) Having invoked

15  the statute before removal, Plaintiff has made the out-of-California forum regime

16  unenforceable, and this Court cannot compel arbitration in a non-California

17  jurisdiction in violation of California law.

18         3.   Defendants' "Wholesale" Request Is Improper Because the

19             Employment Claims Are Not Borne from the Grant Agreements.

20      Even if there is a Convention-covered arbitration agreement as to a narrow

21  class of disputes, i.e., true disputes about rights created by the Grant Agreements,

22  Defendants do not get to use that clause as a Trojan horse to export the rest of the

23  case. For the non-Grant, employment-based causes of action such as statutory wage

24  protections, severance obligations, and other California employment claims,

25  Defendants' position would require the Court to do precisely what § 925 forbids:

26  force a California employee to adjudicate California employment claims outside

27  California and/or under non-California law. Cal. Lab. Code § 925(a), (b), (d). The

28  Convention's strong pro-enforcement policy is not a command to enforce more than

- 16 -

PLAINTIFF'S OPPOSITION TO MOTION
TO COMPEL ARBITRATION AND STAY
PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

4938-1005-5560

1  the parties lawfully agreed to enforce. It is a command to enforce arbitration

2  agreements unless they are "null and void" or "inoperative." Article II(3) is

3  mandatory in both directions. *CLMS Mgmt. Servs. LP v. Amwins Brokerage of Ga.,*

4  *LLC*, 8 F.4th 1011 (9th Cir. 2021) (recognizing Article II(3)'s mandate to enforce

5  unless "null and void, inoperative or incapable of being performed").

6       In sum, the Court should deny Defendants' demand for wholesale arbitration

7  and hold that, as applied to Plaintiff's California employment claims that do not arise

8  from (or require interpretation of) the Grant Agreements, the out-of-California

9  arbitration referral is "inoperative" under Article II(3) because it violates Labor Code

10  § 925. Cal. Lab. Code § 925(a)–(d). If Defendants want arbitration of narrow, grant-

11  specific disputes, they must take the agreement as it can lawfully operate not as a

12  vehicle to strip a California employee of California's statutory protections through a

13  forum-export clause that California law makes voidable.

14  **E.   The Arbitration Clause Is "Null and Void" or "Inoperative" Under**

15  **Article II (3) Because It Was Adopted Under Mistake or Fraud and**

16  **Without Meaningful Assent**

17       Article II (3) requires referral to arbitration only when the parties actually

18  agreed to arbitrate. And even under the Convention's narrow exceptions, U.S. courts

19  recognize that an arbitration clause is not enforceable where it is subject to an

20  internationally recognized defense such as duress, mistake, or fraud. *Escobar v.*

21  *Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1286 (11th Cir. 2015)

22       California contract law is fully consistent with that framework: consent is not

23  "real or free" when obtained through mistake. Cal. Civ. Code § 1567. That law is

24  also consistent with Cayman law. See, e.g., *Druck Corp. v. Macro Fund Ltd.*, 290 F.

25  App'x 441, 443 (2d Cir. 2008) (affirming dismissal or rescission theory based on

26  mistake and stating that the outcome "is the same either way" i.e. "whether New York

27  or Cayman Islands law applies to [the contract] claim.")

28       Defendants' motion asks for the most aggressive version of Convention

- 17 -

4938-1005-5560

1    enforcement, that is, a wholesale export of employment-related claims to a New York

2    arbitral forum under Cayman law, while ignoring the basic threshold requirement of

3    contract formation: mutual assent to arbitrate each and every dispute Defendants seek

4    to compel to arbitration. When a party challenges the very existence of an agreement

5    to arbitrate, that formation issue is for the Court. *Three Valleys Mun. Water Dist. v.*

6    *E.F. Hutton & Co.*, 925 F.2d 1136, 1142 (9th Cir. 1991)

7         Here, the record supports three independent mistake-based bases to deny

8    enforcement (or, at minimum, require an evidentiary hearing and deny "wholesale"

9    arbitration): mutual mistake, unilateral mistake, and mistake in execution.

10        <u>First</u>, regarding mutual mistake, the parties' course of dealing and the

11   Employment Agreement show a shared understanding that California courts would

12   resolve employment disputes; the Grant Agreements were not intended to silently

13   replace that forum. From the beginning of the relationship, Plaintiff's Employment

14   Agreement mandated California adjudication and San Diego venue for "all issues of

15   law, equity, or fact" arising out of or connected with the employment agreement,

16   including claims for interpretation, breach, or enforcement. That provision remained

17   unchanged when employment was renewed in 2017 during the same period when the

18   MEP was offered and Plaintiff continued employment.

19        Against that backdrop, the later OEP Grant Agreements were presented as

20   grant documentation tied to the MEP and not as a renegotiation of the forum for

21   employment disputes. Yet Defendants insist those grant papers did exactly that, via

22   an arbitration clause "buried" under a generic heading ("Jurisdiction; Waiver of Jury

23   Trial") and a Cayman governing-law clause. If Defendants intended those provisions

24   to supplant the parties' longstanding California forum agreement for employment

25   disputes, one would expect the document to say so plainly especially given the

26   preexisting, explicit, employment-specific California forum selection clause.

27        California law treats a contract entered under mistake as lacking real consent.

28   Cal. Civ. Code § 1567. And where consent is given by mistake, the contract (or the

- 18 -

4938-1005-5560

1   mistaken provision) is subject to rescission. Cal. Civ. Code § 1689(b)(1). At

2   minimum, these facts support the inference that the parties were operating under a

3   shared mistaken assumption that the Employment Agreement's California forum

4   clause controlled employment disputes and that the Grant Agreements were limited

5   to the MEP mechanics, not a stealth forum rewrite. That mutual mistake goes to

6   assent to the arbitration clause as Defendants now deploy it, rendering Defendants'

7   requested referral "inoperative" under Article II(3).

8   <u>Second</u>, Plaintiff, on his part, reasonably believed the Employment Agreement

9   governed employment disputes and did not knowingly consent to arbitrate

10   employment claims in New York under Cayman law; rescission is warranted under

11   Civil Code §§ 1577 and 1689. Even if Defendants contend they "intended" a

12   sweeping forum swap, Plaintiff did not. (Mullis Decl., ¶¶22-23) The mistake was

13   straightforward and material: he believed the only explicit employment contract (the

14   Employment Agreement) continued to govern the forum and law for employment

15   disputes, especially where that provision was reaffirmed through renewal and never

16   renegotiated. That belief was not some idle assumption; it was the written bargain.

17   Critically, Defendants' own moving papers show how Plaintiff's mistake was

18   reasonable. In Neology's proposed separation agreement with Plaintiff dated

19   September 26, 2022, for example, Neology referred to the "Incentive Partnership

20   Interest Grant Agreements … dated May 24, 2018 and March 1, 2022" as between

21   Neology, Inc. and Plaintiff, and referred to the agreements as consisting of

22   "Employee's continuing obligations under the terms of the Employment

23   Agreement." If Neology itself blurred the lines in its own paperwork about what

24   obligations were owed pursuant to the employment relationship, it is reasonable that

25   Plaintiff, a California employee unrepresented by counsel at the time of signing the

26   agreements (Mullis Decl., ¶ 20), made a similar mistake.

27   California defines "mistake of fact" as an error not caused by neglect of a legal

28   duty and consisting of unconscious ignorance of a material fact or belief in the

PLAINTIFF'S OPPOSITION TO MOTION
TO COMPEL ARBITRATION AND STAY
PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

4938-1005-5560

1    existence of a material thing that does not exist. Cal. Civ. Code § 1577. When a

2    party's consent was given by mistake, rescission is available. Cal. Civ. Code

3    § 1689(b)(1). The California Supreme Court has recognized rescission based on

4    unilateral mistake where the mistake is fundamental, the mistaken party did not

5    assume the risk, and enforcement would be inequitable. *Donovan v. RRL Corp.*, 26

6    Cal. 4th 261, 287 (2001), as modified (Sept. 12, 2001)

7        Those equitable considerations apply with special force here because

8    Defendants' "Jurisdiction; Waiver of Jury Trial" heading is exactly the kind of

9    presentation that predictably produces misunderstanding about the provision's

10    essential function. Enforcing an arbitration clause to override an existing

11    employment-forum and applicable law clause without clear notice and affirmative

12    assent would be the paradigm of inequitable enforcement.

13        And because mistake is one of the narrow, internationally recognized defenses

14    U.S. courts accept under Article II(3), Plaintiff's unilateral-mistake showing fits

15    squarely within the Convention's "null and void / inoperative" exception.

16        Third, the arbitration clause is void because Plaintiff did not fundamentally

17    understand he was assenting to arbitration at all. At best, he understood the

18    deceptively titled clause to address court jurisdiction and jury waiver – things that he

19    reasonably believed were already covered by the Employment Agreement.

20        Where there is fraud (or mistake) in the execution of an agreement, it means

21    there was no actual assent and the agreement is void. *Rosenthal v. Great Western*

22    *Fin. Sec. Corp.*, 14 Cal. 4th 394 (1996). That doctrine fits the facts alleged here:

23    Plaintiff was presented with Grant Agreements after the employment relationship and

24    California forum selection clause were already in place, and he later learned, that the

25    documents contained a New York arbitration forum selection provision under a

26    heading that communicated "jurisdiction" and "jury waiver," not "mandatory

27    arbitration," plus a Cayman governing-law clause. When the label and placement of

28    the clause reasonably convey one kind of legal commitment while the text operates

- 20 -

4938-1005-5560

1  as something different (mandatory out of state and foreign law arbitration), the

2  resulting "agreement" lacks the knowing assent required to form a binding contract.

3      Under Article II (3), a clause that is void for lack of assent is, by definition,

4  "null and void" or "inoperative." And because formation is for the Court, Defendants

5  cannot short-circuit this issue by demanding that the arbitrator decide whether the

6  arbitration clause exists. *Three Valleys*, 925 F.2d at 1139–42.

7      **F.**    **The Arbitration Clause in the MEP Documents Is Voidable Because**

8          **It was Hidden and the Documents Were Signed Under Duress.**

9      Consent is not "real or free" when obtained through duress, and a contract

10  induced by duress is rescindable. Cal. Civ. Code §§ 1567–1568; Cal. Civ. Code

11  § 1689(b)(1). Duress occurs when the proponent commits a wrongful act that is

12  sufficiently coercive to cause a reasonably prudent person, faced with no reasonable

13  alternative, to assent—and the duress causes the assent. *Martinez-Gonzalez v.*

14  *Elkhorn Packing Co., LLC*, 25 F.4th 613, 620-621 (9th Cir. 2022) (summarizing

15  California law); *Perez v. Uline, Inc.*, 157 Cal. App. 4th 953, 959 (2007).

16      That standard is met here. Plaintiff had already agreed to the employment

17  renewal terms including the promised equity and performed; he had already earned

18  the interests or a substantial portion thereof before Defendants ever presented the

19  formal MEP documents. Then Defendants presented those documents on a take-it-

20  or-leave-it basis, without counsel, and with a clear ultimatum: sign now, or forfeit

21  what you already earned. (Mullis Decl., ¶¶8-11) The threat to forfeit earned

22  entitlements unless he signed new paperwork was not "hard bargaining"; it was a

23  coercive leverage play by Defendants. Courts recognize that a threat to withhold an

24  acknowledged obligation constitutes the requisite wrongful act for duress. *Rich &*

25  *Whillock, Inc. v. Ashton Dev., Inc.*, 157 Cal. App. 3d 1154, 1159–60 (1984);

26  *CrossTalk Prods., Inc. v. Jacobson*, 65 Cal. App. 4th 631, 644–45 (1998).

27      Nor did Plaintiff have a "reasonable alternative." The choice was not between

28  signing now versus negotiating later; it was between signing or forfeiture of vested,

- 21 -

4938-1005-5560

1  earned consideration. That is the textbook absence of meaningful choice that makes
2  economic duress a "mockery of freedom of contract." *Rich & Whillock*, 157 Cal.
3  App. 3d at 1159; *Martinez-Gonzalez*, 25 F.4th at 619–21 (contrasting situations
4  where alternatives exist). Because Plaintiff would not have signed absent the obvious
5  forfeiture threat, the MEP documents (and any arbitration clause buried within them)
6  are voidable for duress. Cal. Civ. Code §§ 1567–1568, 1689(b)(1).

7      **G.**    **Neology, Feldmann, and OEP Capital Advisors Lack Standing to**
8             **Enforce Arbitration:** ***Setty*** **Forecloses the "Everyone Gets**
9             **Arbitration" Theory**

10  Defendants' standing argument boils down to this: even if Neology, Feldmann,
11  and OEP Capital Advisors did not sign the Grant Agreements (or did not sign in any
12  relevant capacity), they can still compel arbitration because Plaintiff's complaint
13  "relates to" the grant documents. That is exactly the move the Ninth Circuit rejected
14  in *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166 (9th Cir. 2021), and
15  *Rajagopalan v. NOTEWORLD, LLC*, 718 F.3d 844 (9th Cir. 2013).

16  *Setty* sets the controlling frame: non-signatories may sometimes compel
17  arbitration under domestic equitable estoppel but *only if* the claims implicate the
18  agreement containing the arbitration clause. In *Setty*, the Ninth Circuit accepted the
19  possibility that a non-signatory could compel arbitration in a New York Convention
20  case under domestic equitable estoppel doctrines but held the doctrine fails unless
21  "the allegations … implicate the agreement that contained the arbitration clause—a
22  prerequisite for compelling arbitration under the equitable estoppel framework."
23  *Setty*, 3 F.4th at 1169.

24  That prerequisite is fatal here. The bulk of Plaintiff's claims arise from and can
25  be litigated entirely by reference to (i) the Employment Agreement (with an express
26  California exclusive-jurisdiction clause) and (ii) California statutory and common-
27  law duties. Those claims do not require construing the Grant Agreements, do not seek
28  to enforce them, and do not depend on any "transaction contemplated" by them. They

4938-1005-5560

1  are employment claims. The Grant Agreements are, at most, one factual chapter in a
2  longer employment narrative referenced in Plaintiff employment and separation.

3      In other words, *Setty* makes clear that factual overlap is not enough. There,
4  some issues tangentially involved a signatory and some allegations referenced the
5  partnership relationship, but the Ninth Circuit held the claims were not "clearly
6  'intertwined' with the Partnership Deed providing for arbitration," because the
7  alleged rights did not arise from the deed's terms. *Setty*, 3 F.4th at 1169. The same is
8  true here: employment rights (wages, severance, statutory protections, tort duties) do
9  not arise from the Grant Agreements' arbitration clause, and they do not become
10 "intertwined" simply because the complaint also pleads an equity-related dispute.

11     Contrary to Defendants' sweeping arguments, equitable estoppel is a narrow
12 doctrine aimed at preventing a signatory from claiming the benefits of the contract
13 while avoiding its burdens. Plaintiff is not doing that. The Ninth Circuit's equitable
14 estoppel rule is not "any relationship to the contract." It is about fairness when a party
15 tries to have it both ways: "'Equitable estoppel precludes a party from claiming the
16 benefits of a contract while simultaneously attempting to avoid the burdens that
17 contract imposes.'" *Setty*, 3 F.4th at 1169 (quoting *Mundi v. Union Sec. Life Ins. Co.*,
18 555 F.3d 1042, 1045 (9th Cir. 2009); *Rajagopalan*, 718 F.3d at 847 (same). That
19 predicate is missing here. Plaintiff is not suing Neology, Feldmann, or OEP Capital
20 Advisors (or even the signatories) to enforce their rights under the Grant Agreements
21 while dodging arbitration. Plaintiff is asserting largely independent employment-
22 based claims primarily grounded in statutes and the Employment Agreement that
23 exist whether or not the Grant Agreements ever existed.

24     And *Rajagopalan* is directly on point: a non-signatory to an agreement with
25 an arbitration clause cannot invoke equitable estoppel where the plaintiff has
26 "statutory claims that are separate from the contract itself" and "does not contend that
27 [the nonsignatory] breached the terms of the contract." *Rajagopalan*, 718 F.3d at 848.
28 That describes this case. Whatever claim Plaintiff has about the MEP or vesting

- 23 -

4938-1005-5560

1  mechanics may implicate the Grant Agreements which were signed by two OEP
2  entitles. The non-signatory Defendants cannot bootstrap standing for them too across
3  the entire complaint by pointing to the existence of one arbitrable subject.

4      Defendants' arguments that the claims are intertwined fare no better.
5  "Intertwined" means contract-dependent, not "mentioned in the same complaint."
6  Essentially, Defendants' standing theory depends on diluting "intertwined" into
7  "referenced." But the Ninth Circuit uses "intertwined" as a limiting principle: it is
8  "essential … that the subject matter of the dispute [be] intertwined with the contract
9  providing for arbitration." *Rajagopalan*, 718 F.3d at 847; Setty, 3 F.4th at 1169.

10      In *Setty*, for example, the crux of several claims involved ownership issues, yet
11  the Ninth Circuit still refused to apply equitable estoppel because ownership turned
12  on "prior use" and facts independent of the partnership deed's provisions. *Setty*, 3
13  F.4th at 1169. The same logic applies here: the employment claims turn on
14  independent sources including statutory obligations and the Employment Agreement,
15  and not on any term of the Grant Agreements. The fact that Defendants would prefer
16  to reframe those claims as "equity compensation disputes" is not a substitute for the
17  required showing that they are contract-dependent.

18      In *Rajagopalan*, the Ninth Circuit stated flatly: "We have never previously
19  allowed a non-signatory defendant to invoke equitable estoppel against a signatory
20  plaintiff, and we decline to expand the doctrine here." *Rajagopalan*, 718 F.3d at 847.
21  *Setty* repeated the same point in applying the doctrine and rejecting arbitration. *Setty*,
22  3 F.4th at 1169. Defendants are asking this Court to do what the Ninth Circuit has
23  repeatedly refused to do: expand equitable estoppel so that a non-signatory can
24  compel a signatory to arbitrate broad statutory employment claims merely because
25  some related equity paperwork exists in the background. That is not equitable
26  estoppel. That is rewriting the contract to create arbitration standing where none
27  exists. The Court should reject Defendants' invitation.

28

PLAINTIFF'S OPPOSITION TO MOTION
TO COMPEL ARBITRATION AND STAY
PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

4938-1005-5560

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**H.    Defendants Are Not Entitled to a Stay of the Case, and Any Stay Must Be Narrowly Tailored**

Defendants seek a blanket stay that would freeze this case wholesale while they arbitrate, at most, a narrow MEP dispute. The FAA and the Convention do not authorize that result. A stay is appropriate only to the extent an action is "referable to arbitration" under a valid agreement. 9 U.S.C. § 3.

The Court has discretion to allow non-arbitrable claims to proceed, particularly where (as here) the non-MEP claims arise from distinct agreements (including the Employment Agreement's California forum and applicable-law clauses), independent statutory duties, and separate factual predicates that do not require interpretation of the Grant Agreements. A blanket stay would prejudice Plaintiff by delaying adjudication of domestic employment claims not subject to the Convention while rewarding Defendants' attempt to repackage the case as an "equity dispute."

Thus, if the Court concludes any issues are arbitrable, the remedy is surgical: compel arbitration only as to those issues and deny a stay as to the balance. Claims involving independent legal standards, damages, and proof can proceed without intruding on any arbitrable aspects. A wholesale stay would serve only to delay and would not promote efficiency, conserve resources, or ensure prompt justice.

**IV.    CONCLUSION**

For these reasons, the Court should deny Defendants' request to compel arbitration. Defendants have not met their *prima facie* burden to show the clauses fall under the New York Convention. At minimum, if the Court is inclined to grant any relief, it should reject the request for wholesale Convention arbitration, as to employment-related disputes governed by the Employment Agreement, and allow those claims to proceed. If the Court considers compelling arbitration of any broader set of claims, it should require Defendants to prove (through competent evidence and a hearing if necessary) that Plaintiff agreed to arbitrate those disputes in New York and under Cayman law.

- 25 -

4938-1005-5560

1  Dated: January 14, 2026

2

3                                                    By: _____
                                                         Joseph N. Mullis, *Pro Se*
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 26 -