EMIL PETROSSIAN - State Bar No. 264222
epetrossian@glaserweil.com
ALEXANDER R. MILLER - State Bar No. 294474
amiller@glaserweil.com
GLASER WEIL FINK HOWARD
  JORDAN & SHAPIRO LLP
600 West Broadway, Suite 2850
San Diego, California 92101
Tel.: (619) 765-4380
Fax: (619) 483-0646

*Attorneys for Defendants*
NEOLOGY, INC., BRADLEY H. FELDMANN,
OEP CAPITAL ADVISORS, L.P.,
OEP NEOLOGY CAYMAN, L.P., and
OEP VI GENERAL PARTNER, L.P.

*Additional Counsel Listed on Signature Page*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH N. MULLIS,<br><br>  Plaintiff,<br><br>v.<br><br>NEOLOGY, INC., et al.,<br><br>  Defendants. | CASE NO. 3:25-cv-03247-JES-BJW<br><br>**DEFENDANTS' REPLY TO PLAINTIFF JOSEPH N. MULLIS'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 1

    A. The Grant Agreements "Fall Under" the Convention. ......................... 1

    B. The Arbitration Provisions Cover All Claims in this Action. .............. 3

    C. Plaintiff's Contract-Based Defenses Fail. ............................................ 7

        1. Labor Code § 925 Does Not Void the Arbitration Provision. ..... 7

        2. There Was No Mutual Mistake or Unilateral Mistake of Fact. ............................................................................................ 7

        3. There Was No Fraud. ................................................................... 8

        4. There Was No Duress. ................................................................. 9

    D. Defendants Are Entitled to Invoke Equitable Estoppel. ....................... 9

    E. The Court Should Stay the Whole Case. ............................................ 10

II. CONCLUSION ............................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABD Ins. and Fin. Servs., Inc. v. HUB Int'l Ins. Servs., Inc.*,
   2023 Cal. App. Unpub. LEXIS 5697 (Sept. 26, 2023) ....................................... 7

*Access Info. Mgmt. of Hawaii, LLC v. Shred-It Am., Inc.*,
   2010 U.S. Dist. LEXIS 116862 (D. Haw. Nov. 2, 2010) ..................................... 3

*AJ's Shoes Outlet, LLC v. Indep. Specialty Ins. Co.*,
   2023 U.S. Dist. LEXIS 10758 (E.D. La. Jan. 23, 2023) ....................................... 2

*Beiking v. Artwynn Holdings United States*,
   2019 U.S. Dist. LEXIS 246821 (C.D. Cal. Apr. 8, 2019) ..................................... 3

*Brinker v. Axos Bank*,
   2025 U.S. Dist. LEXIS 100273 (S.D. Cal. May 27, 2025) ................................... 3

*Cont'l 611 Fund LLC v. Certain Underwriters at Lloyd's London*,
   2025 U.S. Dist. LEXIS 203100 (E.D. Wis. Oct. 15, 2025) ................................... 2

*Ding Ding v. Structure Therapeutics, Inc.*,
   2024 U.S. Dist. LEXIS 196549 (N.D. Cal. Oct. 29, 2024) ................................... 3

*GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*,
   590 U.S. 432 (2020) ............................................................................................ 10

*Hunter v. Pre-Paid Legal Servs.*,
   2025 U.S. Dist. LEXIS 219384 (N.D. Cal. Nov. 6, 2025) ................................... 7

*Iyere v. Wise Auto Group*,
   87 Cal. App. 5th 747 (2023) ................................................................................ 7

*Johnson v. Columbia Props. Anchorage, LP*,
   437 F.3d 894 (9th Cir. 2006) ................................................................................ 2

*Maletis v. Perkins & Co. P.C.*,
   2006 U.S. Dist. LEXIS 17896 (D. Ore. Mar. 27, 2006) ...................................... 3

**REPLY TO OPP. TO DEFS.' MOT. TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

*Martinez-Gonzalez v. Elkhorn Packing Co.*,
 25 F.4th 613 (9th Cir. 2022) ................................................................................. 9, 10

*Mohebbi v. Khazen*,
 2014 U.S. Dist. LEXIS 168351 (N.D. Cal. Dec. 4, 2014) ................................... 9

*Momot v. Mastro*,
 652 F.3d 982 (9th Cir. 2011) ................................................................................ 6

*Mousebelt Labs Pte. Ltd. v. Armstrong*,
 674 F. Supp. 3d 728 (N.D. Cal. May 24, 2023) .................................................. 1

*Mullis v. J.P. Morgan Chase & Co.*,
 2024 U.S. Dist. LEXIS 221393 (S.D. Cal. Dec. 5, 2024) ............................... 4, 6

*Mullis v. J.P. Morgan Chase & Co.*,
 2025 U.S. Dist. LEXIS 102441 (S.D. Cal. May 29, 2025) ............................. 6, 9

*Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*,
 2015 U.S. Dist. LEXIS 147717 (E.D. Cal. Oct. 29, 2015) ................................. 4

*Optimum Prods. v. HBO*,
 839 F. App'x 75 (9th Cir. 2020) .......................................................................... 4

*Peters v. Amazon Servs. LLC*,
 2 F. Supp. 3d 1165, 1173 (W.D. Wash. 2013) .................................................... 4

*Rajagopalan v. NoteWorld, LLC*,
 718 F.3d 844 (9th Cir. 2013) .............................................................................. 10

*Roth v. Jaguar Land Rover N. Am., LLC*,
 2017 U.S. Dist. LEXIS 226017 (C.D. Cal. Dec. 4, 2017) ................................... 8

*Setty v. Shrinivas Sugandhalaya LLP*,
 3 F.4th 1166 (9th Cir. 2021) .............................................................................. 10

*Seybert v. Chln, Inc.*,
 2021 U.S. Dist. LEXIS 46947 (S.D. Cal. Mar. 11, 2021) ................................... 9

*Simula, Inc. v. Autoliv, Inc.*,
 175 F.3d 716 (9th Cir. 1999) ................................................................................ 9

*Translarity, Inc. v. Grand Junction Semiconductor Pte. Ltd.*,
 2024 U.S. Dist. LEXIS 196550 (N.D. Cal. Oct. 29, 2024) ........................... 7, 10

*Vazquez v. Tommy Bahama R&R Holdings, Inc.*,
  2023 U.S. Dist. LEXIS 212503 (S.D. Cal. Nov. 29, 2023) ................................... 9

*Wallens v. Milliman Fin. Risk Mgmt. LLC*,
  509 F. Supp. 3d 1204 (C.D. Cal. 2020) ............................................................... 8

*Youssefzadeh v. Global-IP Cayman*,
  2018 U.S. Dist. LEXIS 239589 (C.D. Cal. Jul. 30, 2018) .................................... 4

*Zhang v. Superior Court*,
  85 Cal. App. 5th 167 (2022) ............................................................................ 6, 7

**Statutes**

California Labor Code § 925 ................................................................................... 7

**Other Authorities**

ICC Rules art. 6, r. 3 ................................................................................................ 6

ICC Rules art. 6, r. 5 ................................................................................................ 6

ICC Rules art. 6, r. 9 ................................................................................................ 6

## I. INTRODUCTION

Plaintiff Joseph N. Mullis's ("Plaintiff") Opposition (the "Opposition") to Defendants' Motion to Compel Arbitration and Stay Proceedings (the "Motion") repeatedly sidesteps Defendants' arguments or disregards controlling authority. It therefore warrants minimal response. Several of Plaintiff's assertions and mischaracterizations, however, require correction:

### A. The Grant Agreements "Fall Under" the Convention.

Plaintiff disputes only the fourth requirement of the "falls under the Convention" analysis, contending Defendants have not shown a foreign party signatory or a foreign relationship. (Opp. at 4.) Plaintiff's argument attempts to manufacture a dispute where none exists. OEP VI GP Ltd.—which itself is a signatory to the Grant Agreements (ECF 15-1, Ex. A, ECF 15-4, Ex. D)—is a company organized under the laws of the Cayman Islands and is therefore a citizen of the Cayman Islands. *See Mousebelt Labs Pte. Ltd. v. Armstrong*, 674 F. Supp. 3d 728, 734 (N.D. Cal. May 24, 2023) (Ltd. company was a citizen of the jurisdiction where it was organized).[1] This ends the inquiry.

But in any event, the Defendant OEP Signatories are also foreign citizens. They are Cayman Islands limited partnerships, each "formed and registered in the Cayman Islands," with partners domiciled globally. (ECF 15-1, Ex. A, ECF 15-4, Ex. D). Even indulging Plaintiff's unsupported premise that, for Convention purposes, like with diversity jurisdiction, a partnership's citizenship turns on the citizenship of its partners, the conclusion remains the same: OEP VI GP Ltd. is the general partner of OEP VI General Partner L.P., which in turn is the general partner of OEP Neology Cayman, L.P., and, as already established, it is a Cayman Islands citizen. Declaration of Jessica Marion at ¶ 2. It thus follows that the OEP Signatories are Cayman Islands citizens because their general partner (and general partner's general partner) is domiciled there.

---

[1] For at least this reason, *Mousebelt* is thus applicable. (*See* Opp. at 6-7.)

1
**REPLY TO OPP. TO DEFS.' MOT. TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

*Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (in diversity case, "a partnership is a citizen of all of the states of which its partners are citizens").[2] And even if some other partners were domestic, Defendants are aware of no authority holding that the presence of both U.S. and foreign citizenship within an unincorporated entity defeats the fourth requirement where, as here, at least one partner is a foreign citizen. *See AJ's Shoes Outlet, LLC v. Indep. Specialty Ins. Co.*, 2023 U.S. Dist. LEXIS 10758, at *10 (E.D. La. Jan. 23, 2023) ("Defendants have shown that various members of the syndicate are not American citizens. For purposes of determining whether a party to the agreement is a foreign citizen, these foreign syndicates' citizenship is dispositive.").[3] This is especially true where, as mentioned above, the OEP signatories are all Cayman Islands entities.

Contrary to Plaintiff's claim, there is no specific test for establishing citizenship on a motion to compel arbitration, and *Cont'l 611 Fund LLC v. Certain Underwriters at Lloyd's London*, 2025 U.S. Dist. LEXIS 203100 (E.D. Wis. Oct. 15, 2025) does not hold otherwise. (Opp. at 5.) In that case, the court summarized a party's argument about the sufficiency of citizenship allegations, which Plaintiff quotes here, but the decision turned on the commercial nature of the agreement—the second factor, not the fourth. *Id.* at *11-12, 18-27. The Court did not adopt any elevated pleading or evidentiary rule for proving foreign status, nor did it make any comment either way on factor four. Nevertheless, Defendants provide a declaration addressing these facts.[4]

---

[2] As other examples: OEP Neology Cayman L.P.'s partner had limited partners who were foreign citizens, so this partnership is a citizen of those foreign jurisdictions too. OEP VI General Partner L.P. also has and had foreign limited partners, for example, Joerg Zirener, referenced in the complaint, who is in Germany. Marion Decl. at ¶¶ 3-6.

[3] For the same reason, Plaintiff's unsupported assertion that "[a]s a partner, his United States citizenship attaches to the entities" is misplaced. (Opp. at 6.) Even if true, foreign citizenship remains: a partnership takes each partner's domicile, and some partners are foreign. Plaintiff also is not a partner of OEP VI GP Ltd., which is a foreign signatory.

[4] Defendants may address these points in reply as they are responsive to Plaintiff's Opposition arguments. *See Brinker v. Axos Bank*, 2025 U.S. Dist. LEXIS 100273, at *4

It is also immaterial that some signatories to the Grant Agreements, including Plaintiff, are U.S. citizens. (Opp. at 6.) The "falls under the Convention" analysis requires only that at least one party is not a U.S. citizen. *See Beiking v. Artwynn Holdings United States*, 2019 U.S. Dist. LEXIS 246821, at *4 (C.D. Cal. Apr. 8, 2019) (Convention requirements satisfied where at least one party is not a United States citizen). Accordingly, even accepting Plaintiff's premise that Neology became a party to the Grant Agreements by virtue of a later separation agreement (Opp. at 6), the OEP Signatories and OEP VI GP, Ltd. are parties as well—and they are foreign entities.

Putting citizenship aside, compelling arbitration under the Convention is still appropriate because the Grant Agreements also involve purchase of shares in a Cayman Islands partnership, registered and governed under Cayman Islands Law, thus showing a reasonable relation to a foreign state (ECF 15-1, Ex. A, ECF 15-4, Ex. D). *See Ding Ding v. Structure Therapeutics, Inc.*, 2024 U.S. Dist. LEXIS 196549, at *11 (N.D. Cal. Oct. 29, 2024) (reasonable relation to foreign state is shown where the commercial relationship involves property abroad or envisages performance or enforcement abroad); *compare Maletis v. Perkins & Co. P.C.*, 2006 U.S. Dist. LEXIS 17896, at *5 (D. Ore. Mar. 27, 2006) ("The record does not establish that the parties contemplated or effected the purchase or sale of foreign stocks, bonds or any other activity in a foreign country."). Moreover, the Grant Agreements specify foreign law for enforcement. *See Ding*, 2024 U.S. Dist. LEXIS 196549, at *11; *compare Access Info. Mgmt. of Hawaii, LLC v. Shred-It Am., Inc.*, 2010 U.S. Dist. LEXIS 116862, at *16 (D. Haw. Nov. 2, 2010) (cited by Plaintiff) (finding the agreement "provides that disputes are governed by California and/or federal law" rather than foreign law).

### B. The Arbitration Provisions Cover All Claims in this Action.

Plaintiff asserts that Defendants are wrong to contend that the phrase "in

---

(S.D. Cal. May 27, 2025) ("[R]eply briefs may address points raised in opposition."). Jurisdictional discovery is unnecessary (Opp. at 7); it just duplicates the declaration.

connection with" renders the arbitration clauses broad enough to reach all of Plaintiff's claims, insisting that is "not how arbitration works." (Opp. at 8.) In fact, that is precisely how arbitration works. The question is not, as Plaintiff frames it: "What disputes do these Grant Agreements actually cover?" (Opp. at 9.) That invented standard is narrower than what the law provides. The proper inquiry is intertwinement. "[W]hen an arbitration agreement employs the phrase 'in connection with,' a party's factual allegations 'need only 'touch matters' covered by the contract containing the arbitration clause' in order for the court to require arbitration." *Nationwide Agribusiness Ins. Co. v. Buhler Barth GmbH*, 2015 U.S. Dist. LEXIS 147717, at *16 (E.D. Cal. Oct. 29, 2015); *see also Optimum Prods. v. HBO*, 839 F. App'x 75, 78 (9th Cir. 2020) (affirming order compelling arbitration because arbitration clause was "broad" and applied to any disputes "arising out of" the agreement); *Mullis v. J.P. Morgan Chase & Co.*, 2024 U.S. Dist. LEXIS 221393, at *10 (S.D. Cal. Dec. 5, 2024) (same). "The 'touch matters' test does not require a contractual-interpretation element." *Youssefzadeh v. Global-IP Cayman*, 2018 U.S. Dist. LEXIS 239589, at *15 (C.D. Cal. Jul. 30, 2018).

Turning to the pari passu claims first, they are plainly covered. (Opp. at 10-12.) The standard is not whether the Grant Agreements "even mention[]" pari passu rights, (Opp. at 10), but whether the factual allegations relating to the pari passu claims "touch matters" covered by those agreements. They do. The Grant Agreements comprehensively govern the entirety of Plaintiff's equity compensation, and the alleged pari passu rights are inextricable from those equity rights. (*See* Mot. at 16-17.) As in *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1173 (W.D. Wash. 2013), these issues are arbitrable because Plaintiff entered into the Grant Agreements with knowledge of the alleged prior pari passu promises and nevertheless entered into the Grant Agreements, which superseded any prior compensation agreements.

Plaintiff misunderstands this point. (Opp. at 9-12.) Defendants do not contend that the Grant Agreements are the operative contract for the co-investment opportunity.

They are not. The point is that the Grant Agreements' integration clauses supersede any other agreements concerning Plaintiff's equity rights—including any instrument that Plaintiff contends conferred pari passu co-investment rights—because such rights, if they exist, are part of Plaintiff's equity compensation and therefore fall within the gamut of the Grant Agreement. Plaintiff can disagree and continue to assert that he obtained his pari passu rights through a September 2018 spreadsheet that was not superseded. But that assertion only confirms why arbitration is required. Put simply, the parties dispute whether the Grant Agreement's integration clause supersedes the alleged contract from which Plaintiff's pari passu claims arise. Resolving that dispute, and thus the claims, necessarily requires construing the integration clause, which brings it squarely within the arbitration clauses' broad "in connection with" language.

As for the other claims at issue, Plaintiff concedes that all claims concerning his MEP rights touch on the Grant Agreements. (Opp. at 12-13). To the extent Plaintiff contends that arbitration is not appropriate because he also "pleads distinct duties and disputes that do not arise from the Grant Agreements" (*id*. at 12), his remaining arguments fare no better. Rather than grapple with the substance, Plaintiff speaks in generalities, asserting he never agreed to arbitrate disputes about severance, bonuses, credit card use, or termination. But by use of the phrase "in connection with," for these specific claims, he did. Plaintiff does not meaningfully respond to Defendants' analysis demonstrating how each claim touches the Grant Agreements and thus falls within the "in connection with" scope. (*See* Mot. at 12-16.) Defendants will therefore not rehash what is now essentially unchallenged: these claims are covered by the Grant Agreements. In fact, in the prior action brought by Plaintiff against Neology, involving materially similar arbitration language, this Court already held that claims alleging that defendants "induced [Plaintiff] to release his investment via the Termination Agreement," and that defendants violated statutory law "by taking money that should have been paid to him because of his investment," satisfied the "touch matters" test.

*Mullis*, 2024 U.S. Dist. LEXIS 221393, at *11. The same result should follow here.[5]

Finally, Plaintiff does not dispute the "general statement" that doubts regarding the arbitrability of claims should be resolved in favor of arbitration. (Opp. at 13.) To be clear, this principle is not mere "rhetoric," and Defendants do not invoke it to "override[] applicable law." It is the law. That is, if the Court harbors any doubt regarding the scope of Plaintiff's claims, that doubt must be resolved in favor of arbitration to avoid adjudicating matters over which the Court lacks jurisdiction. *See Mullis v. J.P. Morgan Chase & Co.*, 2025 U.S. Dist. LEXIS 102441, at *7 (S.D. Cal. May 29, 2025) ("[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). More than that, the parties expressly delegated the threshold question of scope and validity to the arbitrator. The Grant Agreements require arbitration of any dispute "regarding the validity, effect, interpretation, or performance of all the legal relationships established by" the agreements and incorporates the ICC Rules, which provide that the arbitral tribunal has authority to decide its own jurisdiction (ECF 15-1, Ex. A; ECF 15-4, Ex. D). *See* ICC Rules art. 6, r. 3, 5, 9. That is a classic delegation clause. *See Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011); *Zhang v. Superior Court*, 85 Cal. App. 5th 167, 180-81 (2022). Accordingly, even if the Court doubts whether some claim is covered under the arbitration provisions, that determination is for the arbitrator to make, not the Court. *See Translarity, Inc. v. Grand Junction Semiconductor Pte. Ltd.*, 2024 U.S. Dist. LEXIS 196550, at *26 (N.D. Cal. Oct. 29, 2024) (in Convention case, court cannot

---

[5] Plaintiff's sole argument about the UCL claim also fails. That claim turns on arbitrable conduct. The presence of a single allegation about credit card use—which could not support the claim on its own—does not justify splitting the claim and retaining that isolated assertion in court. Doing so would be inefficient, risk inconsistent outcomes on the same cause of action, and is not the law.

consider claim coverage where arbitrability was delegated).

### C. Plaintiff's Contract-Based Defenses Fail.

Plaintiff invokes a handful of contract defenses to avoid the agreement he accepted. Setting aside that validity is for the arbitrator (*see supra*, p. 6), each fails.

#### 1. Labor Code § 925 Does Not Void the Arbitration Provision.

This arbitration agreement does not violate Section 925. (Opp. at 15-17.) Section 925 protects an unrepresented employee who is required to accept employment terms that would strip the employee of the protections of California law for a controversy arising in California. *See* Cal. Lab. Code § 925. Here, the Grant Agreements are not between Plaintiff and his employer nor were they presented as a "condition of employment." *Id.*; *see ABD Ins. and Fin. Servs., Inc. v. HUB Int'l Ins. Servs., Inc.*, 2023 Cal. App. Unpub. LEXIS 5697, at *23-24 (Sept. 26, 2023).

Further, agreeing to arbitrate does not waive any substantive rights; it merely selects an arbitral, rather than judicial, forum in which to vindicate them. *Iyere v. Wise Auto Group*, 87 Cal. App. 5th 747, 760 (2023). Arbitration therefore does not necessarily implicate the concerns animating Section 925. *See id.*[6] In any event, whether Section 925 applies here is a question for the arbitrator, not the Court. *See Zhang*, 85 Cal. App. 5th at 175-76.[7]

#### 2. There Was No Mutual Mistake or Unilateral Mistake of Fact.

There is no mistake that renders the agreements void. (Opp. at 17-21.) First, Plaintiff bears the burden to prove a mutual mistake concerning an assumption underlying the contract. *See Roth v. Jaguar Land Rover N. Am., LLC*, 2017 U.S. Dist. LEXIS 226017, at *9-10 (C.D. Cal. Dec. 4, 2017). He cannot. He posits that there must have been a "shared understanding that California courts would resolve employment

---

[6] Tellingly, Plaintiff cites no authority addressing Section 925 and arbitration. *See Iyere*, 87 Cal. App. 5th at 760 (Section 925 cases "involve contracts requiring California employees to litigate claims in, or under the substantive law of, another state.").

[7] If the Court finds Section 925 applicable, offending terms can be severed. *See Hunter v. Pre-Paid Legal Servs.*, 2025 U.S. Dist. LEXIS 219384 (N.D. Cal. Nov. 6, 2025).

disputes" because the choice of law provision in his employment agreement was not renegotiated in connection with the Grant Agreements. (Opp. at 18.) That unreasonable contention, not held by Defendants, fails. The employment agreement's choice-of-law term and the Grant Agreements' arbitration terms comfortably coexist. To illustrate, if there is a breach of the employment agreement that does not implicate the arbitration agreement—example: Plaintiff's breach of confidentiality terms—that case proceeds in court. By contrast, if an alleged breach occurs that concerns issues subject to the Grant Agreements, the parties intended for the arbitration provisions to control.

Second, to the extent Plaintiff claims he did not knowingly consent to arbitration (Opp. at 19-20), "[a] plaintiff is bound by the provisions of an arbitration agreement regardless of whether he read the agreement or was aware of the scope of the arbitration clause when he signed the agreement." *Wallens v. Milliman Fin. Risk Mgmt. LLC*, 509 F. Supp. 3d 1204, 1212 (C.D. Cal. 2020). Thus, absent knowledge of and inducement of Plaintiff's alleged misunderstanding—which did not occur here—Plaintiff is bound by the agreements he signed. *See id*.[8]

### 3. There Was No Fraud.

Similarly, the Grant Agreements are not the product of fraud. (Opp. at 20-21.) The arbitration provision is a single paragraph, plainly labeled with the underlined heading, "Jurisdiction, Waiver of Jury Trial". (*See* ECF 15-1, 15-4.) If Plaintiff saw that heading—as he admits, and which is straightforward on its face—he surely also saw the very first sentence beneath it expressly referring to arbitration. The Grant Agreements are also relatively short, spanning only fourteen pages. In short, nothing about the arbitration provision was "purposefully hid[den]" from Plaintiff. *Mohebbi v. Khazen*, 2014 U.S. Dist. LEXIS 168351, at *28 (N.D. Cal. Dec. 4, 2014). Nor is there any evidence of any misrepresentations about the nature of the contracts, reliance on

---

[8] A later-in-time document that errantly referred to the Grant Agreements as between Neology and Plaintiff, rather than Neology's parent and Plaintiff, while otherwise accurately describing the agreements says nothing about mistake of fact. (Opp. at 19.)

such misrepresentations, or the denial of a reasonable opportunity to learn the contract terms. *See Vazquez v. Tommy Bahama R&R Holdings, Inc.*, 2023 U.S. Dist. LEXIS 212503, at *9 (S.D. Cal. Nov. 29, 2023) (articulating fraud in the execution elements).

### 4. There Was No Duress.

Plaintiff's duress theory also fails. (Opp. at 21-22.) "[E]conomic duress of the [contracts] as a whole, such as [Plaintiff is] asserting" in his opposition, is a question "for the arbitrator." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 722 (9th Cir. 1999). Even if the Court were to reach the issue, Plaintiff offers no evidence establishing duress. To prove duress, the party resisting arbitration must show a "sufficiently coercive" "wrongful act" that left a reasonably prudent person with "no reasonable alternative" but to succumb. *See Seybert v. Chln, Inc.*, 2021 U.S. Dist. LEXIS 46947, at *9-10 (S.D. Cal. Mar. 11, 2021). Plaintiff fails to do so. As this Court previously determined in connection with materially similar agreements, Plaintiff's assertions are conclusory and speculative: there is no evidence that any allegedly earned compensation was contingent on signing the Grant Agreements. *Mullis*, 2025 U.S. Dist. LEXIS 102441, at *11. Specifically, there is no evidence that Plaintiff needed to invest in OEP any more than he needed to invest in the stock market or some other investment vehicle. *Id.* Nor is there evidence of any wrongful act that deprived Plaintiff of his free will when deciding whether to sign the separate agreements. *Id.*[9]

Moreover, the "economic duress doctrine is employed 'reluctant[ly]' and 'only in limited circumstances.'" *Martinez-Gonzalez*, 25 F.4th at 625. It is a "last resort" that does not apply where a party can "vindicate his interests in arbitration." *Id.* Defendants showed the arbitration agreements are fully capable of performance. (Mot. at 21-22.)

### D. Defendants Are Entitled to Invoke Equitable Estoppel.

Plaintiff cannot avoid arbitration by suing nonsignatories. (Opp. at 22-24.)

---

[9] Plaintiff's own authorities undermine his claim: in *Martinez-Gonzalez v. Elkhorn Packing Co.*, 25 F.4th 613 (9th Cir. 2022), for example, the Ninth Circuit reversed a duress finding on a stronger evidentiary record than anything Plaintiff presents here.

1  Plaintiff's reliance on *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166 (9th Cir.
2  2021) is misplaced. In *Setty*, the Ninth Circuit affirmed denial of equitable estoppel
3  because the allegations "did not implicate the agreement that contained the arbitration
4  clause." *Id.* at 1169. Here, by contrast, Plaintiff's claimed injuries arise by virtue of the
5  Grant Agreements, and he alleges collusive misconduct among signatories and
6  nonsignatories alike. Those allegations satisfy the Ninth Circuit's "intertwined"
7  standard and warrant application of equitable estoppel in Convention cases. *Id*. Plaintiff
8  also cites to *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844 (9th Cir. 2013) to say that
9  the Ninth Circuit has never previously allowed a non-signatory defendant to invoke
10 equitable estoppel. But that case predates *GE Energy Power Conversion Fr. SAS, Corp.
11 v. Outokumpu Stainless USA, LLC*, 590 U.S. 432 (2020), which explicitly allowed for
12 the use of equitable estoppel in cases like this one.

### E. The Court Should Stay the Whole Case.

This entire action, not merely part of it, should be stayed. (*See* Opp. at 25.) If this case were allowed to proceed piecemeal both here and before an arbitrator, the Court and arbitrator would necessarily be forced to decide overlapping issues, which could result in duplicative litigation and inconsistent decisions. A stay of the entire action, however, would avoid duplication of resources and inconsistent findings. *See Translarity, Inc.*, 2024 U.S. Dist. LEXIS 196550, at *33 (staying non-arbitrable claims because they were intertwined with arbitrable ones).

## II. CONCLUSION

For the foregoing reasons and those in the Motion, the Court should grant Defendants' Motion.

DATED: January 21, 2026

Respectfully submitted,

GLASER WEIL FINK HOWARD
 JORDAN & SHAPIRO LLP

By: */s/ Emil Petrossian*
　　Emil Petrossian
　　Alexander R. Miller

| | |
|---|---|
| 1 | |
| 2 | Robert Haney, Jr. (Admitted *Pro Hac Vice*) |
| 3 | FOLEY HOAG LLP |
| | 1301 Avenue of the Americas |
| 4 | New York, NY 10019 |
| | Tel.: (212) 812-0399 |
| 5 | rhaney@foleyhoag.com |
| 6 | |
| | Leah Rizkallah (*Pro Hac Vice* |
| 7 | Application Forthcoming) |
| | Rachel Kerner (Admitted *Pro Hac Vice*) |
| 8 | FOLEY HOAG LLP |
| | 155 Seaport Boulevard |
| 9 | Boston, MA 02210 |
| | Tel.: (617) 832-1000 |
| 10 | lrizkallah@foleyhoag.com |
| 11 | |
| | *Attorneys for Defendants* |
| 12 | NEOLOGY, INC., BRADLEY H. |
| | FELDMANN, OEP CAPITAL |
| 13 | ADVISORS, L.P., OEP NEOLOGY |
| | CAYMAN, L.P., and OEP VI |
| 14 | GENERAL PARTNER, L.P. |