Joseph N. Mullis
1152 Breakaway Drive
Oceanside, California 92057
*Pro Se*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH N. MULLIS, a California individual,<br><br>Plaintiff,<br><br>v.<br><br>NEOLOGY, INC., a Delaware and California corporation; BRADLEY H. FELDMANN, a California individual; OEP Capital Advisors, L.P., a Delaware limited partnership; OEP Neology Cayman, L.P. a Cayman Islands limited partnership; OEP VI General Partner, L.P. a Cayman Islands limited partnership; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 3:25-cv-03247-JES-BJW<br><br>**[PROPOSED] SUR-REPLY OF PLAINTIFF JOSEPH N. MULLIS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date:  January 28, 2026<br>Time:  9:00 a.m.<br>Courtroom:  4B<br><br>Complaint Filed:  September 25, 2025<br>Trial Date:  None Set |

- 1 -

[PROPOSED] SUR-REPLY OF PLAINTIFF
JOSEPH N. MULLIS IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

## I. INTRODUCTION

Recognizing that their initial argument fell short, Defendants' Reply Brief tries to rehabilitate the flawed Motion to Compel Arbitration and Stay Proceedings. Rather than confront Plaintiff's substantive arguments directly, Defendants *pivot* from their moving papers, offer *new* but equally deficient evidence and argument, and ask this Court to delegate threshold questions to the arbitrator. This sur-reply addresses the four new arguments and evidentiary bases: (1) Defendants reliance on OEP VI GP, Ltd to prove foreign citizenship under the New York Convention; (2) Defendants' reliance on the Jessica Marion declaration and the accompanying argument that varied citizenship (including U.S. citizenship) is sufficient to show an agreement falls under the convention; (3) Defendants belated "reasonable relation" argument that the Grant Agreements concern a purchase of shares; and (4) Defendants' belated argument that the Grant Agreements contain a clear and unmistakable delegation clause that requires threshold questions to be left to the arbitrator; not this Court.

## II. ARGUMENT

### A. Defendants *New* Argument Regarding OEP VI GP, Ltd.'s Citizenship Is a Pivot and Does Not Cure the Defects; Defendants Still Have Not Proven the Agreements Fall Under the Convention

In their moving papers, Defendants referred to "both" limited partnership entities as the relevant parties to the Grant Agreements. Dkt. 16-1, p. 15 of 29 ("[T]he OEP Signatories, *both parties to the Grant Agreements* and Defendants here … ."); Dkt. 161, p. 22 f 29 ("Plaintiff has sued … *both* signatories …") This was intentional, because the limited partnerships (OEP Neology Cayman, L.P. and OEP VI General Partner, L.P) are the *only parties* to the Grant Agreements. Dkt. 21-1, pp. 10, 23, 30, 44. OEP VI GP, Ltd. is not a party; it acts on behalf of the partnerships. *Id*. Thus, OEP VI GP, Ltd.'s alleged citizenship as a "parent" entity cannot satisfy the Convention's fourth element. *See*, *e.g.*, *Overturf v. Deutsche Bank AG*, No. CIVA

- 2 -

[PROPOSED] SUR-REPLY OF PLAINTIFF JOSEPH N. MULLIS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

3:05CV1988L, 2006 WL 2848102, at *8 (N.D. Tex. Oct. 5, 2006)("Although the accounts were used to execute various trades with Deutsche Bank AG, a German corporation, Deutsche Bank AG was not a party to the agreements. Thus the account agreements were only between citizens of the United States.")

Even if Defendants could belatedly invoke OEP VI GP, Ltd.'s citizenship, that showing is insufficient. Under Section 202 of the FAA, a corporation is also a citizen of the United States if it "has its principal place of business in the United States." 9 U.S.C. § 202. Available evidence demonstrates that OEP VI GP, Ltd. *has its principal place of business in the United States*. In Schedule 13G/A filings with the Securities and Exchange Commission for Allegro Microsystems, Inc., which identifies "OEP VI GP, Ltd." as a "Reporting Person," the filing states: "The principal business address of the Reporting Persons is c/o One Equity Partners, 510 Madison Avenue, 19th Floor, New York, New York 10022."[1] This address is corroborated by the same SEC filings of multiple OEP entities including OEP VI General Partner, L.P. which also identifies its "nerve center" at the same 510 Madison Avenue address. *Id*. That same address is the notice address, and the New York location is where the documents were signed by the OEP entities.

In sum, Defendants have not proven non-U.S. citizenship even through OEP VI GP, Ltd – a nonparty to the agreements and not a defendant here. Tellingly,

---

[1] https://www.sec.gov/Archives/edgar/data/866291/000095010324014604/dp219049_sc13ga-3.htm (Schedule 13G/A *executed by OEP VI GP, Ltd.'s Richard Cashin*); https://www.sec.gov/Archives/edgar/data/1829449/000095010324001379/dp205634_sc13ga-2.htm (**same**). Pursuant to Fed. R. Evid. 201(b), Plaintiff respectfully requests that the Court take judicial notice of the SEC filings as they are publicly filed records available on the SEC's EDGAR system. These filings are matters of public record, capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. *See, e.g.*, *In re HMD Glob. Oy*, No. 24-MC-02144-JLB, 2025 WL 1453836, at *2 (S.D. Cal. May 21, 2025) (taking judicial notice of Qualcomm's principal place of business as being in San Diego, CA based on Qualcomm's 10-K Annual Filing available on the SEC website)

- 3 -

[PROPOSED] SUR-REPLY OF PLAINTIFF JOSEPH N. MULLIS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

although they submitted a corporate declaration of Jessica Marion, that declaration conspicuously omits any assertion that the OEP VI GP, Ltd.'s principal place of business is anywhere other than in the United States. The record is unimpeachable. OEP vi GP, Ltd. has represented through its affiliated entities that it is a U.S. citizen. And so, even assuming the entity, <u>which is not a defendant, a party to the contracts, or a party that moved to compel arbitration separately</u>, could now claim it has such rights, the Court has sufficient evidence that defeats its arguments.

Defendants candidly confess that "[j]urisdictional discovery is unnecessary" because "it just duplicates the declaration." Dkt. 24, p.8, fn.4. On this record with a declaration that does not articulate the principal place of business of OEP VI GP, Ltd, even if the Court is convinced that OEP VI GP, Ltd can belatedly stand in place of the limited partnership defendants (it cannot) and assert its alleged citizenship (it cannot), Defendants invite the Court to end its inquiry by simply relying on what is before it. If the Court requires additional evidence, Plaintiff respectfully requests an opportunity to conduct limited-scope jurisdictional discovery to establish the true citizenship of all entities entitled to enforce the arbitration clauses.

### B. The *New* Evidence in the Jessica Marion Declaration Is Improper and the Argument that Any "Foreign" Membership (Including U.S.) Shows the Agreement Falls Under the Convention Is Wrong

Defendants argue in their Reply that even one foreign member of the limited partnerships renders the agreements subject to the New York Convention. This contention is wrong. Defendants purport to rely on the Jessica Marion declaration for this argument, but Section 202 is explicit: an arbitration agreement "entirely between citizens of the United States shall be deemed not to fall under the Convention." 9 U.S.C. § 202. No known case says otherwise. "Assuming both parties are United States citizens, then the Convention's fourth prerequisite is not met." *Newterra, Inc. v. Foley Cellulose LLC*, No. 4:20CV77-WS/MAF, 2020 WL 13016747, at *2 (N.D.

- 4 -

[PROPOSED] SUR-REPLY OF PLAINTIFF JOSEPH N. MULLIS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

Fla. Dec. 1, 2020) (finding entity incorporated in Ontario, Canada, but also organized under Nevada law was a U.S. citizen under Section 202).[2] The legislative history of Section 202 is in accord: "The second sentence of Section 202 is intended to make it clear that an agreement or award arising out of a legal relationship exclusively between citizens of the United State*s* is not enforceable under the Convention in U.S. Courts unless it has a reasonable relation with a foreign state." H.R.Rep. No. 1181, 91st Cong., 2d Sess. 2 (1970), reprinted in 1970 U.S.C.C.A.N. 3601, 3602.

Defendants are aware of no authority *and tellingly cite no authority* holding that the presence of both U.S. and foreign citizenship within an unincorporated entity satisfies the Convention's fourth requirement. It does not. And the cases Defendants appear to cite do not support their argument. *AJ's Shoes Outlet, LLC v. Indep. Specialty Ins. Co.*, No. CV 22-1148, 2023 WL 358779, at *6, fn, 37 (E.D. La. Jan. 23, 2023) is inapposite because the entities the court referenced in determining that "at least one Defendant be a foreign citizen is met" were all foreign entities in England, warranting a finding that "at least one Defendant" was foreign. There was no evidence that any defendant was both a U.S. *and* a foreign citizen. And Defendants fail to point to evidence here that any *defendant* here is not a U.S. citizen. And even

---

[2] *See also*, *Coastal States Trading, Inc. v. Zenith Nav. S. A.*, 446 F. Supp. 330, 342 (S.D.N.Y. 1977)(Panama-incorporated defendant with a principal place of business in New York was a "citizen of the United States" for purposes of § 202); *Astra Oil Trading NV v. Petrobras Am. Inc.*, No. CIV.A. H-09-1274, 2010 WL 3069793, at *7–8 (S.D. Tex. Aug. 4, 2010)(treating Astra Oil Trading N.V. as a U.S. citizen for § 202 purposes because, although incorporated in the Netherlands, nerve center appeared to be in in Huntington Beach, California where its executives made decisions); *Smith-Varga v. Royal Caribbean Cruises, Ltd.*, No. 8:13-CV-00198-EAK, 2013 WL 3119471, at *2 (M.D. Fla. June 18, 2013) (although incorporated in Delaware, entity was a U.S. citizen because Miami was its principal place of business); *Scott v. Louisville Bedding Co.*, 404 S.W.3d 870, 881 (Ky. Ct. App. 2013)(entities were incorporated in Switzerland, but the court analyzed § 202's definition and treated them as U.S. citizens based on their U.S. principal place of business (so the Convention analysis proceeded under the "entirely between U.S. citizens" framework). This case law relays one uniform messages: citizenship for purposes of the New York Convention mirrors normal citizenship rules as in diversity cases.

- 5 -

[PROPOSED] SUR-REPLY OF PLAINTIFF JOSEPH N. MULLIS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

assuming OEP VI GP, Ltd. were not a U.S. citizen under the Convention (*which it is*), it is *not a defendant* in this action and has *not* moved to compel arbitration.

Courts require specificity in establishing citizenship under the Convention. See *Storyteller Prod. Co., LLC v. Audient Cap. GP Ltd.*, No. CV 24-1664 PA (MRWX), 2024 WL 1680069, at *1-2 (C.D. Cal. Mar. 1, 2024) (dismissing petition to confirm arbitral award under the Convention where the petition did not sufficiently allege the citizenship of the limited liability company or partnership entities); *RTI Connectivity Pte. Ltd. v. Gateway Network Connections, LLC*, No. CV 22-00302 LEK-RT, 2022 WL 2981518, at *1 (D. Haw. July 28, 2022) (describing the detailed membership composition of the LLC in analyzing U.S. citizenship under the Convention). The Supreme Court has likewise held that unincorporated entities' citizenship turns on the citizenship of their members. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569 (2004) ("Because [the limited partnership] had two partners who were Mexican citizens at the time of filing, the partnership was a Mexican citizen."). On this record, Defendants have failed to prove any applicable foreign citizenship applies.

### C. Defendants' *Belated* "Reasonable Relation" Argument Also Fails and Is Not Supported by Any Admissible Evidence

Defendants argue for the first time that, "putting citizenship aside," arbitration should be compelled because the Grant Agreements "involve purchase of shares in a Cayman Islands partnership, registered and governed under Cayman Islands Law, thus showing a reasonable relation to a foreign state." This argument, which was not touched on at all in the moving papers, fails for multiple reasons.

First, it is bare argument unsupported by any assertion of fact or unambiguous documents in the record. While they submit a declaration, the declaration does not attest or explain that the Grant Agreements involve "purchase of shares in a Cayman Islands partnership." Nor could they, because the text of the agreements does not use the word "purchase" or similar terms Defendants *argue* here, and simply reflects

- 6 -

[PROPOSED] SUR-REPLY OF PLAINTIFF JOSEPH N. MULLIS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

grants of equity benefits "in connection with [Plaintiff]'s employment and/or services" (Dkt. 21-1, p.30 of 49, ([Section 1(a)]), and "in connection with and as a part of the compensation and incentive arrangements" (*Id.*, p.32 of 49 [Section 1(g)]).

<u>Second</u>, the case law Defendants cite is inapposite and actually supports Plaintiff's position. In *Ding v. Structure Therapeutics, Inc.*, 755 F. Supp. 3d 1200, 1209 (N.D. Cal. 2024), the employment contract provided that the plaintiff's "primary office locations shall be [the] home office in New York and the Company's facilities *in Shanghai, China*," (emphasis added) along with other evidence such as contractual language envisaging reimbursement for expenses incurred during "extended business trips in China." In other words, the contract contemplated performance abroad. Defendants cite no such evidence here to support their argument.

In *Maletis v. Perkins & Co., P.C.*, No. CIV. 05-820-ST, 2006 WL 782461, at *2 (D. Or. Mar. 27, 2006), the court recognized that the record did not show the parties "contemplated or effected" any foreign activity, that is, no purchase or sale of foreign securities, no performance overseas, no enforcement abroad, irrespective of a clause authorizing DB Alex. Brown to "purchase and or sell foreign currency options." *Id*. The court treated the phrase as mere boilerplate, untethered to evidence that the relationship actually involved foreign transactions or foreign performance, and ultimately found the agreements did not fall under the Convention. *Id*.

In *Access Info. Mgmt. of Hawaii, LLC v. Shred-It Am., Inc.*, No. CIV. 10-00622 JMS, 2010 WL 4642045, at *5-6 (D. Haw. Nov. 2, 2010), the court rejected a similar attempt. Defendant SIA pointed to a long list of Canadian connections (including a confidentiality agreement governed by Ontario law) but the court rejected that characterization, holding that the core Franchise Agreement called for local law. Defendants here fail to explain how that case supports their desired outcome, given they are doing exactly what SIA did: arguing a "foreign" entity (OEP VI GP, Ltd., which has no agreement of record that is at issue with Plaintiff) can compel

- 7 -

[PROPOSED] SUR-REPLY OF PLAINTIFF JOSEPH N. MULLIS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

arbitration between Plaintiff and the limited partnership defendants who are the only parties actually identified in the Grant Agreements as contracting parties.

The case law is in accord that designating foreign law or a foreign forum is inadequate to establish a reasonable relation. *Jones v. Sea Tow Servs. Freeport NY Inc.*, 30 F.3d 360, 366 (2d Cir. 1994) ("It is not sufficient that English law was to be applied in the resolution of the salvage dispute and that the arbitration proceeding was to be held before an English arbitrator in England."); *Ensco Offshore Co. v. Titan Marine L.L.C.*, 370 F. Supp. 2d 594, 600–01 (S.D. Tex. 2005) (foreign arbitral forum or foreign governing law did not create reasonable relation; court focused on the relationship, which was domestic salvage "just off the Gulf Coast"); *Nomanbhoy v. Vahanvaty*, No. 11 C 2456, 2011 WL 6736052, at *4 (N.D. Ill. Dec. 21, 2011) (collecting cases holding that foreign arbitration forum and foreign governing law, taken alone, do not create a reasonable relation with a foreign state).

<u>Third</u>, even if Defendants had explained how the agreements supposedly involve "purchase of shares" abroad (they do not), that would not be insufficient; the only reasonable characterization of the Grant Agreements cuts the other way. See *Ling v. Deutsche Bank AG*, No. 4:05CV345, 2005 WL 3158040, at *5 (E.D. Tex. Nov. 28, 2005) (holding that options on foreign currency were treated as "bets" with "no evidence or argument that foreign currency was ever actually purchased pursuant to the agreements," undermining "property located abroad" and "performance abroad"); *Overturf v. Deutsche Bank AG*, No. CIVA 3:05CV1988L, 2006 WL 2848102, at *9 (N.D. Tex. Oct. 5, 2006) (the "digital options" were essentially "bets" on foreign-currency values, with no actual foreign property transfer).

Here, no performance of any aspect of the legal relationship between the parties occurred abroad. The *only* performance Defendants can point to is a payment by Neology, Inc., a U.S. entity, in United States dollars, to a United States resident (Plaintiff), via United States payroll, accompanied by applicable payroll taxes. (Dkt.

- 8 -

[PROPOSED] SUR-REPLY OF PLAINTIFF JOSEPH N. MULLIS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

21-1, p. 4 of 49, ¶16) On this record, there is no applicable "foreign" nexus that warrants finding that the Grant Agreements fall under the New York Convention.

### D.     Defendants' Belated Delegation Argument Is Waived and Meritless

Defendants now argue that the Grant Agreements delegated threshold questions to the arbitrator. This pivot is impermissible. In their moving papers, Defendants asked this Court to decide all matters and did not cite any clear and unambiguous delegation clause in the Grant Agreements. See Dkt. 16. Now, confronted with evidence undermining their motion in various respects, Defendants pivot to the arbitrator. Dkt 24, p. 11. Defendants cannot have it both ways: telling the Court it can decide, and then switching course midstream.

In any event, for a delegation clause to be enforceable, it must be "clear and unmistakable" that the parties agreed to submit that issue to arbitration. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). No such clear and unmistakable evidence is before the Court. But even if Defendants could point to such language now, the case law is clear: "Even broad arbitration clauses that expressly delegate the enforceability decision to arbitrators may not meet the clear and unmistakable test, where other language in the agreement creates an uncertainty in that regard." *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 792 (2012).

Here, the same Grant Agreements contemplate invalidity and unenforceability determinations in "any jurisdiction" (Dkt. 21-1, pp.21, 42 [Section 19 of both Grant Agreements]), thereby undermining any claim that threshold questions were the exclusive reserve of the arbitrator. Moreover, the Employment Agreement provides that all disputes related to Plaintiff's employment would be resolved in California State Court. (Dkt. 16-3, p. 9 of 11, Sections 14.1, 15.1, and 15.2) That provision is notable because the Grant Agreements expressly state that the equity is being offered to Plaintiff "in connection with [Plaintiff]'s employment and/or services" (Section 1(a)), and "in connection with and as a part of the compensation and incentive

- 9 -

[PROPOSED] SUR-REPLY OF PLAINTIFF JOSEPH N. MULLIS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

arrangements" (Section 1(g)). With duelling language, any alleged delegation is not "clear and unmistakable."

Moreover, Defendants' conduct in their moving papers by first arguing for the Court to decide all issue, then pivoting midstream, does not show any such clear and unmistakable intention to defer threshold questions to the arbitrator. As Justice Stevens noted, "course of conduct" can show "clear and unmistakable evidence" of excusive delegation. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 79 (2010) (Stevens, J., dissenting). Here, with at least one pending litigation initiated by Defendant Neology, Inc. against Mr. Mullis, and an express invitation for this Court to decide all issues in the moving papers, the "course of conduct" does not suggest that any parties agreed to delegate any threshold issues to the arbitrator.

The cases Defendants cite do not help them. *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) is inapposite because there the agreement there provided that disputes about "the validity or application of any of the provisions" of the agreement would be decided "*exclusively*" by binding arbitration. Defendants cite no such language here. Additionally, Defendants' attempt to defer to arbitral forum rules as the source of delegation fare no better. *Translarity, Inc. v. Grand Junction Semiconductor PTE. Ltd.*, No. 24-CV-02423-SI, 2024 WL 4634059, at *9 (N.D. Cal. Oct. 29, 2024), which Defendants assert for the position that referring to foreign arbitral forum rules is enough to require arbitration of threshold questions is wholly inapposite as it involved sophisticated entities on both ends. Here, Plaintiff, a mere employee without the sophistication of Defendants (who have sophisticated international vehicles through which they conduct business), cannot be expected to locate what rules were at issue or thereby be on notice of the delegation, absent a clear and unambiguous assertion of such delegation in the Grant Agreements.

/ / /

/ / /

- 10 -

[PROPOSED] SUR-REPLY OF PLAINTIFF JOSEPH N. MULLIS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

Case 3:25-cv-03247-JES-BJW   Document 25-1   Filed 01/25/26   PageID.478   Page 11 of 12

## III. CONCLUSION

For these reasons and those stated in Plaintiff's Opposition, Defendants have failed to establish that the arbitration clauses here fall under the New York Convention. The Court should allow Plaintiff's claims to proceed in this forum.

Dated: January 25, 2026

By: *[signature: Joseph N. Mullis]*
Joseph N. Mullis, *Pro Se*

[PROPOSED] SUR-REPLY OF PLAINTIFF JOSEPH N. MULLIS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2026, a true and correct copy of the foregoing **[PROPOSED] SUR-REPLY OF PLAINTIFF JOSEPH N. MULLIS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** was filed electronically with the Clerk of the above-captioned Court utilizing the Court's CM/ECF system, resulting in an automatic transmission of a Notice of Electronic Filing to all counsel of record in the above-referenced proceeding.

*/s/ Joseph N. Mullis*
Joseph N. Mullis

- 12 -

[PROPOSED] SUR-REPLY OF PLAINTIFF JOSEPH N. MULLIS IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 3:25-CV-03247-JES-BJW